**Frederick Simon GRAVES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–03–00142–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 14, 2004.

424

Jerome Godinich, Jr., Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

JANE BLAND, Justice.

A jury convicted Frederick Simon Graves of aggravated sexual assault of a child, and assessed punishment at eight years' confinement and a $10,000 fine. On appeal, Graves asserts the following six issues: (1) the trial court erred in admitting the complainant child's videotaped interview; (2) the trial court erred in overruling Graves's objection to the State's jury argument referring to "rabbit trails"; (3) the trial court erred in overruling Graves's objection to the State's jury argument referring to extraneous offenses; (4) the trial court erred in not sua sponte including a reasonable-doubt jury instruction for evidence of extraneous offenses admitted during the guilt/innocence phase; (5) the trial court erred in not sua sponte including a reasonable-doubt jury instruction for extraneous offenses during the punishment phase; and (6) trial counsel rendered ineffective assistance. We affirm.

## Facts

T.N., the complainant in this case, is an 11–year–old boy. Graves worked for T.N.'s father, R.N., at a car dealership. Graves became a family friend and babysat T.N. At trial, T.N. testified that Graves had fondled his penis on two separate occasions. On the first occasion, Graves and T.N. were alone at R.N.'s house watching a movie. While the two were lying underneath a blanket, Graves touched T.N.'s penis. On the second occasion, Graves touched T.N.'s penis "on top" of T.N.'s clothes while the two were alone in a car. Sometime later, T.N. and Graves went to buy a digital camera.[1] That day, while the two were alone at R.N.'s house lying under a blanket in T.N.'s room, Graves performed oral sex on T.N. On Christmas Eve 2001, T.N. reported to his father that Graves had assaulted him.

A forensic interviewer with the Children's Assessment Center interviewed T.N. The trial court admitted a videotape of this interview into evidence. Both the videotape and T.N.'s testimony include de-

---

1. T.N. testified that they bought the camera "around October of 2000," but he was not sure of the exact day. During an earlier videotaped interview, however, he could not remember the month or year.

scriptions of Graves performing oral sex on T.N. more than once on the day they bought the digital camera. At trial, T.N. testified that it happened twice that day, while on the videotape, T.N. stated that it happened three times that day. On the videotape, but not during trial, T.N. described that Graves had commented on T.N.'s physical appearance. Both at trial and on the videotape, T.N. described that Graves moved T.N. "up and down for like a little bit of time." Both at trial and on the videotape, T.N. described the two prior fondling instances that took place at R.N.'s house and in the car.

Graves did not testify during the guilt/innocence phase. The defense called other teenage boys who had become friends with Graves while racing motor bikes at motorcross events. Billy Perran, a 17–year–old boy, testified on Graves's behalf, explaining that Graves is like a "father figure" to him. Billy explained that Graves was never sexually inappropriate with him, although Graves had "many chances."

During the punishment phase, the State introduced evidence of Graves's prior theft conviction. During closing argument, the State relied on the prior fondling acts committed on T.N. to argue that the jury should enhance punishment.

**Admission of the Videotaped Statement**

In his first issue, Graves contends that the trial court erred in admitting T.N.'s videotaped interview with a Children's Assessment Center forensic interviewer detailing his sexual contact with Graves. In addition to the sexual assault, during direct examination, T.N. testified that Graves fondled him on two previous occasions: (1) one evening at R.N.'s house while Graves visited and R.N. slept, and (2) one day while the two were alone in a car. Sometime later, Graves performed oral sex on T.N. at R.N.'s house while the two were alone. T.N. testified that he was lying under a blanket watching television during the first fondling offense and the oral sex offense. During cross-examination, defense counsel impeached T.N. as follows:

Q. And at one point, isn't it true that Gabby [the interviewer at the Child's Assessment Center] became concerned because you said this had happened and nobody had removed your clothes. And she said: How did your clothes get off? And you backed up and said Fred took them off; is that right?

A. I—I don't remember saying that. I just remember saying Fred took them off. I'm not real sure.

Q. In any case, you didn't mention anything about this occasion that you're telling us now, this earlier occasion under a blanket, did you?

A. No, I didn't. No, I didn't.

Q. Okay. And you didn't mention that to Gabby and you didn't mention that to the police officers when they interviewed you, did you?

A. No. I just got interviewed by Gabby.

Q. When you talked to the police officer and when you talked to Gabby, both times you were asked a lot of questions, weren't you?

A. Yeah. I was asked plenty of questions.

Q. And the questions went on for a long time?

A. The questions—yes sir, it did. Took about 45 minutes.

Q. And when they're asking those questions, one of the things they kept saying: Every time that you can think of that something nasty or

bad happened, please tell us about it. Is that correct?

A. No.

Q. But they made awfully sure you knew you should tell everything?

A. Yeah. They made sure I should tell them what happened.

To rehabilitate T.N.'s testimony, the State offered T.N.'s videotaped interview at the Children's Assessment Center. The defense objected, contending that the videotape is not admissible under article 38.071, section 1 of the Code of Criminal Procedure. Article 38.071 allows the admission of a videotaped statement of a child witness under certain conditions, but section 1 provides:

> This article applies only to a hearing or proceeding in which the court determines that a child younger than 13 years of age would be unavailable to testify in the presence of the defendant about an offense defined by any of the following sections of the Penal Code:
>
> . . .
>
> (8) Section 22.021 (Aggravated Sexual Assault).

TEX.CODE CRIM. PROC. ANN. art. 38.071, § 1(8) (Vernon 2004).

Article 38.071 thus specifically requires that the child be younger than 13 years of age and unavailable to testify. The defense objected to the introduction of the videotape on the basis that the State did not meet the requirements of article 38.071, because T.N. was 13 years old at the time of trial and testified.

Our sister court addressed this issue in *Jensen v. State,* 66 S.W.3d 528, 535 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd), in which the trial court admitted the child's videotape in evidence even though the child testified at trial. The Fourteenth Court of Appeals held that, under the plain-language of article 38.071, the trial court erred in admitting the videotape because the child was available to testify, and in fact, testified at trial. *Id.*[2] We agree that the State did not satisfy the requirements of article 38.071, because T.N. was 13 years old and testified at trial.

This case is distinguishable, however, from *Jensen.* Here, the trial court admitted the videotape on a different basis—as a prior consistent statement of the witness, after the witness had been impeached on cross-examination. Although the trial court did not specifically mention Texas Rule of Evidence 801(e)(1)(B), it stated the basis for its ruling as follows:

> [T]he complaining witness and all the witnesses have been impeached with regards to their prior consistent and inconsistent statements. I find it ironic that we've done that, and now we have a statement that the witness has given. I'll anticipate the first note from the jury is going to be: Where is the child's statement?
>
> I'm going to find that since his prior statements and ability to recall are in issue, I'm going to allow the videotape. And there's no violation of confrontation clause because you had your chance to cross-examine him, as well as and specifically with regard to those statements

---

2. The *Jensen* court held that the error was harmless because the child's live testimony did not differ substantially from the facts revealed in the videotape. *Jensen v. State,* 66 S.W.3d at 535–36 (noting the well-established rule that "the improper admission of evidence does not constitute reversible error if other properly admitted evidence proves the same facts"); *see also Matz v. State,* 21 S.W.3d 911, 912–13 (Tex.App.-Fort Worth 2000, pet. ref'd) (holding that error in admission of videotape was harmless because it was cumulative of child's properly admitted live testimony).

when he gave them, what he said and to whom.

A prior statement may be admitted if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." TEX.R. EVID. 801(e)(1)(B). The defense challenged T.N.'s credibility, raising doubts as to fabrication or improper influence. For example, as set forth above, the defense impeached T.N., questioning him whether he told the Child Assessment Center interviewer or the police about the time Graves fondled him under a blanket. The defense also implied that the interviewer asked leading questions during the entire 45–minute interview, thus implying that T.N.'s testimony was not credible. Additionally, the defense implied that T.N.'s conduct with other children, including his two-year-old brother, were the real issues during T.N.'s therapy sessions, and thus, that T.N. recently had fabricated some of the incidents. The defense also questioned T.N. about his school drama class, implying that T.N. was a good "actor," and perhaps acting on the witness stand. We hold that the videotape is admissible under rule of evidence 801(e)(1)(B) as a prior consistent statement. *See Dowthitt v. State*, 931 S.W.2d 244, 264 (Tex.Crim.App.1996) (upholding admission of videotape, in capital murder case, as prior consistent statement under rule 801(e)(1)(B)); [3] *see also Wylie v. State*, 908 S.W.2d 307, 310 (Tex.App.-San Antonio 1995, pet. ref'd) (holding that videotape

was admissible under rule 801(e)(1)(B) as prior consistent statement because defense challenged child's credibility).

■ Moreover, defense counsel introduced specifics as to the context of the videotape on cross-examination and questioned the propriety of the interviewer's technique. Counsel's global references to the interview raised issues about the nature of the videotape, and opened the door to admission of the tape as evidence. *See Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim.App.1993) (noting that a witness "opens the door" to otherwise irrelevant past criminal history if his testimony creates a "false impression" of law-abiding behavior).

### Improper Jury Argument During Guilt/Innocence

In his second issue, Graves contends the trial court erred in overruling his objection to the State's closing argument during the guilt/innocence phase. Graves argues that the State's comments about a "rabbit trail" struck at Graves over the shoulders of his counsel. The State argued:

[The State]: [The defense] can trash us all day long. Don't get thrown down a rabbit trail. Don't follow the defense's distractions. They want to put up all the smoke and mirrors so you do not see the truth.

[Defense counsel]: Your Honor, I have to object to this argument. We've let it go on a while, but it's inviting the jury to strike the defendant over the shoulder of the defense counsel.

---

**3.** *Dowthitt* was a capital murder case, not a sexual assault of a child case. Since *Dowthitt*, two unpublished appellate court opinions regarding sexual assault of a child relied on *Dowthitt* to admit videotaped testimony as prior consistent statements under rule 801(e)(1)(B), when the child-victim testified at trial and the videotaped statement was offered to rebut an express or implied charge of

recent fabrication or improper motive. *See Box v. State*, No. 14–02001217–CR, 2004 WL 1091891, at *2 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (not designated for publication); *Sanchez v. State*, No. 05–00–01680, 2002 WL 338770, at *2 (Tex.App.-Dallas 2002, pet. ref'd) (not designated for publication).

The Court: That will be overruled.

■ The State may not use closing argument to strike at a defendant over the shoulders of his counsel or accuse that counsel of bad faith. *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex.Crim.App.1984). The State responds that its jury argument answered the argument of opposing counsel, who had argued to the jury that the prosecutor had not offered other witnesses to show that Graves is "bad," and that the State "had an answer for everything."

■ The Court of Criminal Appeals analyzed a similar jury argument in *Mosley v. State*, 983 S.W.2d 249, 258–59 (Tex. Crim.App.1998). The prosecutor in *Mosley* indicated that the defense counsel was asking the jury to "take a side road, a series of side roads, rabbit trails, and a rabbit trail that will lead ... to a dead-end." *Id.* at 258. The court held that such "mildly inappropriate" comments, strikingly similar to the comments in this case, constituted harmless error. *Id.* at 260. The court cautioned that defense counsel's "legitimate arguments" cannot serve as a basis for permitting prosecutorial comments that "cast aspersion on defense counsel's veracity." *Id.* at 259 (citing *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim.App.1995)). Although the rule is not precise, the court explained that "a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Id. Mosley* requires that we review claims of harm arising from improper jury argument under the following three-part test: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3)

the certainty of conviction without the misconduct. *Id.*

■ In applying the first factor, the severity of the misconduct here, as in *Mosley*, is small, or "mildly inappropriate." *See id.* at 260. The comments did not accuse the defense counsel of lying or suggest that any evidence was manufactured. *See id.* Rather, they responded to opposing counsel's argument that the State had acted inappropriately. Accordingly, the severity of the misconduct does not weigh heavily in Graves's favor.

■ In applying the second factor, we consider the measures adopted to cure the misconduct. As in *Mosley*, the trial court here did not take any curative action. As the *Mosley* court noted, however, the jury is in a position to evaluate the truthfulness of the prosecutor's assertion, and such comments could backfire if the jury disagrees with them. *Id.* Regarding the third factor, we look at the certainty of conviction absent the misconduct. The case lacked physical evidence of a sexual assault, and only the complainant actually witnessed the sexual assault. T.N. testified at trial, however, and his statements are consistent with R.N.'s testimony as the outcry witness.[4] The jury found T.N.'s testimony to be credible. In the larger context of the State's entire argument, the statements about "rabbit trails" did not inject new facts. In a case such as this one that largely turns on credibility, this argument could not have caused a different result. Given the evidence and the mild nature of the inappropriate comments, we conclude that the comments do not cause uncertainty in the jury's conviction. After examining the argument in light of the *Mosely* factors, we hold that

---

4. *See* TEX.CODE CRIM. PROC ANN. art. 38.072 (Vernon Supp.2004) (providing for the admissibility of certain hearsay statements made by victimized child in a prosecution for various sexual or assaultive offenses).

the prosecutor's comments were mildly inappropriate, and insufficient to warrant a new trial.

### Improper Jury Argument During Punishment

In his third issue, Graves contends the trial court erred in overruling his objection to the State's jury argument, during the punishment phase, regarding "implied" extraneous offenses.

During the guilt/innocence phase, Billy Perran testified on Graves's behalf. Billy testified that he met Graves while racing motor bikes at a motorcross event. He explained that Graves is a "really good friend," like a "father figure." Graves took Billy and other young boys to Europe to watch racing events. He paid for the apartment where Billy and his mom previously had lived, and bought Billy's furniture, which Graves now keeps at his house. He also paid for Billy's racing lessons and offered to pay for Billy to go college in England to learn about the motor sport industry. Billy spent the night at Graves's house "about ten to twelve times." During those overnight visits, Billy slept on the bed and Graves slept on the floor. Billy testified that Graves was never sexually inappropriate with him, although Graves "had many chances."

During closing argument at the punishment phase, the prosecutor argued as follows:

[The State]: [Graves] is a 37–year–old man who took advantage of an 11–year–old and tested the waters and took it one step further and one step further. Who knows where he would have gotten if [T.N.] wasn't brave enough to come forward. If [T.N.] had the same structure he had and his parents had—these boys don't have that kind of family. They don't have that kind of support. Who is Billy Perran going to tell what happened

to him? He has a free ticket out of town. A free ticket to college. A free ticket to a dream to be a famous racer.

[Defense counsel]: Objection to that being outside the evidence. Mr. Perran denied it ever happened.

The Court: That will be overruled.

[The State]: Why would Billy Perran ever tell you, so that he can live in the situation he's in now? He's got a lot to lose by telling. All those kids do.

■■■ One permissible area of jury argument is to make reasonable deductions from the evidence. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App.1980). Counsel is allowed wide latitude in drawing inferences from the evidence, so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim.App.1988). The purpose of closing argument is to assimilate the evidence to assist the fact-finder in drawing proper conclusions from the evidence. *Id.* at 400. The jury is then free to accept or reject such conclusions and inferences. *Id.*

■■■ "A prosecutor is allowed to argue that the witnesses for the defense are not worthy of belief." *Satterwhite v. State*, 858 S.W.2d 412, 425 (Tex.Crim.App.1993). Jury argument that vouches for or questions the credibility of a witness is proper if it involves a reasonable deduction from the evidence. *George v. State*, 117 S.W.3d 285, 288 (Tex.App.-Texarkana 2003, pet. ref'd).

■■■ Billy Perran testified on Graves's behalf. Having done so, his credibility as a witness became an issue and was the proper subject of comment by the prosecutor. *See Satterwhite*, 858 S.W.2d at 425. The prosecutor reasonably could have deduced that Billy had a financial incentive to lie-if Graves went to jail, he would no longer pay for Billy's housing, motorcross

races, trips to Europe, and his college education. We conclude that it was not improper during closing argument for the prosecution to contend that Billy could have a financial incentive to testify favorably for Graves. Accordingly, the trial court did not err in overruling Graves's objection.

### Reasonable–Doubt Instruction During Guilt/Innocence

In his fourth issue, Graves contends the trial court erred in not instructing the jury during the guilt/innocence phase that the State must prove extraneous offenses beyond a reasonable doubt. In support of this contention, Graves asserts that the State introduced evidence that he committed extraneous offenses not alleged in the indictment, including the two fondling offenses against T.N. and "inappropriate" relationships with other young boys. Graves asserts that the trial court sua sponte should have included a reasonable-doubt instruction for any extraneous offense evidence admitted during the guilt/innocence phase, even though Graves's counsel admittedly did not make such a request.

In cases of sexual assault of minors, article 38.37, section 2 of the Code of Criminal Procedure provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp. 2004).[5]

In support of his position, Graves cites *Huizar v. State*, 12 S.W.3d 479, 483–85 (Tex.Crim.App.2000), in which the Court of Criminal Appeals holds that, in the punishment phase of non-capital cases, a trial court is statutorily required under Code of Criminal Procedure article 37.07, section 3(a), but not constitutionally required, to instruct a jury sua sponte that it may not consider extraneous-offense evidence, in assessing punishment, unless it finds the extraneous offenses have been proven be-

---

**5.** The following is an example of an article 38.37 jury charge instruction:

> You are instructed that if there is any testimony before you in this case regarding the Defendant's having committed offenses against the alleged victim other than the offense alleged against him in the Indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the state of mind of the Defendant and the child and the previous and subsequent relationship between the Defendant and the child.

*Ware v. State*, 62 S.W.3d 344, 352 (Tex.App.-Fort Worth 2001, pet. ref'd).

Graves did not ask for a limiting instruction when the extraneous offenses were introduced, nor did he object. Furthermore, he does not complain on appeal about the lack of an article 38.37 limiting instruction, but rather asserts that the trial court should have given a reasonable-doubt instruction pursuant to article 37.07. With regard to a limiting instruction, a trial court is not required to give a limiting instruction if a defendant fails to request a limiting instruction at the first opportunity, or "contemporaneous with the admission of the evidence." *Hammock v. State*, 46 S.W.3d 889, 895 (Tex.Crim.App. 2001) (holding that trial court is not required to give limiting instruction when defendant did not object at first opportunity because evidence admitted "for all purposes").

yond a reasonable doubt.[6] *Id.; see also Bolden v. State*, 73 S.W.3d 428, 431 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd).

 Article 37.07, section 3(a), entitled, "Evidence of Prior Criminal Record in all Criminal Cases After a Finding of Guilty," governs the admissibility of evidence at punishment in all non-capital cases. *See Rogers v. State*, 991 S.W.2d 263, 265 (Tex.Crim.App.1999) ("[i]n addition to the Rules of Evidence, Article 37.07 Section 3(a) governs the admissibility of evidence during the punishment stage"); *see also Kutzner v. State*, 994 S.W.2d 180, 188 (Tex.Crim.App.1999) ("non-capital cases are governed by Article 37.07, which requires that extraneous offenses be proven beyond a reasonable doubt"); *Sonnier v. State*, 913 S.W.2d 511, 521 n. 5 (Tex. Crim.App.1995) (noting that Article 37.07 "governs the punishment charge in non-capital trials"). Extraneous offenses thus

get a *limiting* instruction under article 38.37 during the guilt/innocence phase. A reasonable-doubt instruction under article 37.07 applies to punishment because it is the only time those offenses can be used to enhance the punishment of the charged offense.

 Graves urges this court to extend the duty discussed in *Huizar* to the guilt-innocence phase of trial. We declined to do so in *Rodriguez v. State*, 137 S.W.3d 228, 231 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding that trial court did not err). Following our court's decision in *Rodriguez*, and noting that article 37.07 expressly relates only to the punishment phase of a trial, we hold that the trial court in this case did not err in failing to give, sua sponte, a reasonable-doubt instruction for extraneous offenses during the guilt-innocence phase.[7]

---

6. The following is an example of an article 37.07, section 3(a) instruction:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, in determining the proper punishment for the offense for which you have found the defendant guilty. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any, [sic] were committed.

*Green v. State*, 72 S.W.3d 420, 425–26 (Tex. App.-Texarkana 2002, pet. ref'd).

7. We note that the intermediate appellate courts are split on this issue. The Amarillo and Fourteenth Courts of Appeals agree with our court. *See Gilbert v. State*, No. 14–02–00727–CR, 2003 WL 22176625 at * 4 (Tex. App.-Houston [14th Dist.] Sept. 23, 2003, no pet.) (not designated for publication) (holding that trial court did not err because statutory duty under article 37.07 § 3(a) does not apply to guilt-innocence phase, and finding no error, the court did not conduct harm analysis); *Salazar v. State*, No. 07–01–0389–CR, 2002 WL 246642 at *3 (Tex.App.-Amarillo Feb.21,

2002, pet. ref'd) (not designated for publication) (holding that trial court did not err in failing to sua sponte provide instruction regarding extraneous offenses during guilt-innocence).

> In contrast, the San Antonio and Dallas Courts of Appeals in unpublished opinions have extended *Huizar's* holding to require the trial court to give the reasonable-doubt instruction for extraneous offenses during the guilt-innocence phase. *See Chapa v. State*, No. 04–02–00346–CR, 2003 WL 1025148 at *1–*2 (Tex.App.-San Antonio March 12, 2003, pet. ref'd) (not designated for publication) (holding that Chapa did not suffer egregious harm from trial court's failure to provide reasonable-doubt instruction because Chapa admitted to prior offenses; therefore, there were no contested issues regarding Capa's prior criminal record or bad acts); *Arnold v. State*, No. 05–01–01733–CR, 2002 WL 31569537 at *1 (Tex.App.-Dallas Nov.20, 2002, no pet.) (not designated for publication) (holding that trial court's error in failing to sua sponte give instruction was harmless because State did not emphasize this evidence in closing argument and evidence of appellant's guilt was otherwise overwhelming).

### Reasonable–Doubt Instruction During Punishment

In his fifth issue, Graves contends the trial court erred in failing to instruct the jury, sua sponte, during the punishment phase, that the State must prove extraneous offenses beyond a reasonable doubt in order to consider such offenses in assessing punishment, even though Graves's counsel admittedly did not make such a request.

In *Huizar*, the Court of Criminal Appeals held that a trial court must include a reasonable-doubt instruction regarding extraneous offenses during the punishment phase, even if the defense does not request it. *Huizar*, 12 S.W.3d at 483–85. Graves contends that, during the punishment phase, the State introduced extraneous offense evidence, in particular: (1) T.N.'s testimony that Graves fondled him on two previous occasions, (2) R.N.'s testimony implying that Graves had "inappropriate" relationships with other young boys, including Billy Perran, and (3) jail cards, judgments, and sentences showing Graves's prior convictions.

*Fondling*

■ Graves contends that the trial court sua sponte should have included a beyond a reasonable doubt jury instruction, because at the guilt/innocence phase, T.N. testified that Graves fondled him in addition to committing the sexual assault of oral sex, as alleged in the indictment. During the guilt/innocence phase, T.N. testified that Graves touched "his private parts" with his hands on two different occasions before he performed oral sex on T.N. T.N. made similar statements during his videotaped interview.

Fondling falls within the category of indecency with a child under Penal Code section 21.11(c). Tex. Pen.Code Ann. § 21.11(c) (Vernon 2003). Oral sex is an aggravated sexual assault under Penal Code section 22.021. Tex. Pen.Code Ann. § 22.021 (Vernon Supp.2004). Separate instances of fondling are different offenses under the penal code, not merely multiple occasions of the same offense. *See Brown v. State*, 6 S.W.3d 571, 575–76 (Tex.App.-Tyler 1999, pet. ref'd).

The State responds that the trial court did not err, because the State introduced no new extraneous offense evidence during the punishment phase. Unlike the *Huizar* case, the State here introduced the fondling offenses through T.N.'s testimony during the guilt-innocence phase. *Compare Huizar v. State*, 966 S.W.2d 702, 705 (Tex.App.-San Antonio 1998), *rev'd*, 12 S.W.3d 479 (Tex.Crim.App.2000) (noting that State introduced new evidence of extraneous sexual assault offenses during punishment). Courts have required the reasonable-doubt instruction, however, regardless of whether the evidence of extraneous acts had been introduced during the guilt-innocence or the punishment phase of the trial. *See Allen v. State*, 47 S.W.3d 47, 50 (Tex.App.-Fort Worth 2001, pet. ref'd); *see also Guzman v. State*, No. 04–02–00198–CR, 2003 WL 22336052, *4 (Tex. App.-San Antonio Oct.15, 2003, pet. ref'd) (not designated for publication).

Moreover, the State referred to the extraneous offense evidence on cross-examination during the punishment phase, and suggested that these extraneous offenses merited a heavier sentence. The State cross-examined Graves's stepmother during the following exchange:

Q. Are you aware there's three incidents?

A. Three incidents of oral sex?

Q. Of improper behavior of a child of a sexual-

A. I was talking about the main charge, which is oral sex.

Q. You knew there was three then?

A. I do now.

In addition, the State argued during closing argument to the jury:

> Remember how it started? Remember how the predator set this up? First, he just tries on the outside of the clothing and touches him in the car. That was the start. Then this predator, in his mind, goes one step further. He touches [T.N.] underneath his clothes as they're laying down watching a Halloween movie. Then the predator takes it one step further and performs oral sex on [T.N.].

The State thus relied upon extraneous offense evidence to argue that the jury should enhance punishment. We hold that, under *Huizar*, the trial court should have instructed the jury pursuant to article 37.07 during the punishment phase.

▬▬▬ Under *Huizar*, we next determine whether the error was harmful under the standard set forth in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985). *See Huizar*, 12 S.W.3d at 483–85; *see also Ellison v. State*, 86 S.W.3d 226, 227–28 (Tex.Crim.App.2002) (remanding cause to court of appeals for harm analysis of trial court's failure sua sponte to give reasonable-doubt instruction). Jury charge error does not require reversal unless it is so egregious that the defendant is denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 171. "Errors which result in egregious harm are those which affect 'the very basis of the case,' deprive the defendant of a 'valuable right,' or 'vitally affect a

defensive theory.'" *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996) (quoting *Almanza*, 686 S.W.2d at 172). "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

The State introduced no physical evidence of a sexual assault, nor did anyone other than the complainant witness the sexual assault. T.N., however, testified at trial, and his statements are consistent with R.N.'s testimony as the outcry witness. The jury found T.N.'s testimony to be credible. Moreover, the range of punishment in this case was 5 to 99 years or life. Although the prosecutor discussed the extraneous offenses during closing argument, he did not seek the maximum punishment available.[8] The jury assessed punishment at eight years' confinement, far below the maximum, and only three years above the minimum. *See Jones v. State*, 111 S.W.3d 600, 609–10 (Tex.App.-Dallas 2003, pet. ref'd) (holding that trial court's failure to give reasonable-doubt instruction sua sponte during punishment phase for extraneous offenses offered during punishment was harmless error in part because the jury assessed punishment far below maximum available, despite State's plea for maximum); *Tabor v. State*, 88 S.W.3d 783, 788–89 (Tex.App.-Tyler 2002, no pet.) (holding that trial court's failure sua sponte to give reasonable-doubt in-

---

8. During the closing argument at punishment, the prosecutor argued as follows:

> How do you place a number of years on something like this? It's difficult, I know. You get to pick a number between 5 and 99. Remember what T.N. has gone through.... One thing is very important, is that you come back with a verdict. And if the 12 of

you have to agree on probation, ... you have to assess 5 years to 10 years. Because those are the minimum and maximum for probation.... If you have to assess probation, do at least 10. Probation is the minimum. Maximum is life. This is not a minimum case.

struction during punishment phase about "pen packets" offered during punishment was harmless error because sentence imposed was well within punishment range and prosecutor had asked for greater sentence). Graves contends that, had the trial court properly instructed the jury, Graves might have received community supervision. Graves's motion for new trial, however, fails to adduce evidence as to how the failure to instruct the jury resulted in harmful error. After reviewing the record in this case in its totality, we cannot conclude that the trial court's failure to give an article 37.07 reasonable-doubt instruction deprived Graves of a fair and impartial punishment hearing.

*Inappropriate Relationships With Other Boys*

■ Graves also contends that the State introduced evidence "implying" that Graves had inappropriate relationships with other young boys, including Billy Perran. These boys testified on behalf of Graves, explaining that Graves had never been sexually inappropriate with them, nor had they witnessed Graves engaging in any inappropriate sexual behavior. Billy specifically testified that Graves was never sexually inappropriate with him, although Graves "had many chances." R.N., T.N.'s father, testified that Graves's behavior with Billy was "very peculiar," such as "riding around the countryside when he should be in school. Putting him up in an apartment. And telling other people that that's his son." R.N. further testified that he was "not alleging" that Graves used Billy for "sexual reasons." None of these statements constitutes evidence of an extraneous offense. Rather, each of the witnesses denied knowledge of any improper conduct with other boys. Accordingly, with respect to Graves's relationships with other boys, the trial court did not err in failing to instruct the jury, sua sponte, that the State must prove extraneous offenses

beyond a reasonable doubt. *See Bluitt v. State*, 137 S.W.3d 51, 54 (Tex.Crim.App. 2004) (holding that "such an instruction is a useless act if no unadjudicated offenses have been introduced").

*Prior Convictions*

■ During punishment, the State introduced evidence of Graves's prior theft conviction. Article 37.07, section 3, of the Code of Criminal Procedure provides that, after a finding of guilt, evidence may be offered by either party as to any matter that the court deems relevant to sentencing, including: (1) the prior criminal record of the defendant; (2) the general reputation of the defendant; (3) the character of the defendant; (4) an opinion regarding the reputation of the defendant; (5) the circumstances of the offense on trial; and (6) extraneous offenses and bad acts that are shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2004). In *Bluitt*, the Court of Criminal Appeals held that a trial court does not err in refusing to give a beyond a reasonable-doubt instruction if, as here, the defendant's criminal behavior "was in the form of prior offenses which had been subjected to judicial testing under the proper burden and the burden had been met." 137 S.W.3d at 54. The court explained:

> The criminal record of the defendant is not grouped with extraneous offenses, and therefore we presume that the legislature did not intend to require the same burden of proof that it attached to extraneous, unadjudicated offenses. While the prior convictions must be properly proved, to require that prior convictions be re-proved beyond a reasonable doubt would be an absurd result, as the very fact of conviction is evidence that the

burden of proving guilt beyond a reasonable doubt has already been met in a prior proceeding. The critical issue is that testing of the proof. If an offense has been subject to such scrutiny and the burden of proof has been met, regardless of whether the judicial proceeding concluded with a final conviction, it is part of a defendant's criminal record, and Art. 37.03, § 3, does not require further proof of guilt beyond a reasonable doubt.

*Id.; see also Willover v. State,* 84 S.W.3d 751, 753 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). We hold that the trial court did not err in failing to give a reasonable-doubt instruction for Graves's prior convictions.

### Ineffective Assistance of Counsel

In his sixth issue, Graves contends his trial counsel was ineffective because counsel failed to request a reasonable doubt extraneous offense jury instruction during the guilt/innocence and punishment phases.

To establish ineffective assistance of counsel, an appellant must show that (1) trial counsel's representation was so deficient that it fell below the objective standard of professional norms and (2) but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984). Graves has the burden to prove ineffective assistance of counsel and to rebut the presumption that counsel was acting according to sound trial strategy. *Id.* at 466 U.S. at 689, 104 S.Ct. at 2065.

*Guilt/Innocence Phase*

Following our court's decision in *Rodriguez,* we hold that the trial court did not err in failing to give, sua sponte, a reasonable-doubt instruction for extraneous offenses during the guilt-innocence phase. *See Rodriguez,* 137 S.W.3d at 231. Graves was not entitled to the instruction; therefore, his counsel was not ineffective for failing to request it. *See Hardin v. State,* 951 S.W.2d 208, 211 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (holding that failure to request jury instruction about manner in which evidence was obtained was not error and thus did not constitute ineffective assistance because defendant was not entitled to instruction).

*Punishment Phase*

■ With regard to the punishment phase, we hold that, under *Huizar,* the trial court should have instructed the jury pursuant to article 37.07 during the punishment phase about the prior fondling offenses. *See Huizar,* 12 S.W.3d at 483–85. Graves was therefore entitled to a reasonable-doubt instruction during the punishment phase.

As set forth above in issue five, we hold that the absence of a reasonable-doubt instruction during the punishment phase did not deprive Grave of a fair and impartial trial. *See Almanza,* 686 S.W.2d at 171. Graves therefore fails to satisfy the second prong of *Strickland*—that the result of the proceedings would have been different had counsel requested the instruction. *See Allen v. State,* 47 S.W.3d 47, 54–55 (Tex. App.-Fort Worth 2001, pet. ref'd) (holding that defendant did not satisfy second prong of *Strickland* because court analyzed that error was harmless under *Almanza* ). Graves does not show how the results of his proceedings would have been different if counsel would have objected to the jury charge and the trial court had given the reasonable-doubt instruction for extraneous offenses. *See id.* We hold that Graves fails to show he received ineffective assistance of counsel.

## Conclusion

We affirm the judgment of the trial court.