Opinion issued May 26, 2005










In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00066-CR




AARON KECO RAYME, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 952045




O P I N I O N
          Appellant, Aaron Keco Rayme, pleaded not guilty to the offense of murder. 
The jury found him guilty and assessed punishment at life in prison. Appellant
presents the following issues on appeal: (1) that he was egregiously harmed by the
trial court’s failure to instruct the jury in the punishment charge on the State’s burden
of proof regarding extraneous offenses, and (2) that he was denied effective
assistance of counsel. We affirm.
BACKGROUND
          Enjoli Lavette Taylor was the mother of Aeshia, her then two-year-old daughter
with appellant, and Journey, her then one-year-old daughter with another man. 
Taylor’s sister, Dineatras Smith, testified at trial that Taylor and appellant lived on
opposite sides of town. Smith stated that Taylor occasionally left Aeshia with
appellant, but that Taylor refused appellant’s requests that he be allowed to keep
Journey as well. Smith also testified about several instances in which appellant
physically and verbally abused Taylor. Smith described a telephone call from Taylor
in which Taylor said that appellant was threatening her with a box cutter and was
going to kill her. Smith stated that she heard appellant say that he wasn’t going to kill
Taylor “right now,” but that he would later, if he wanted to. Smith also testified that
instances of appellant’s abusive treatment of Taylor included the following: angrily
knocking a telephone out of Taylor’s hand, grabbing Taylor’s cell phone and
throwing it out of a car window, and making harassing telephone calls to Taylor on
Mother’s Day weekend that included death threats. Smith said that she called the
police during the Mother’s Day incident and that appellant, who had apparently come
to the apartment, left after the police spoke with Taylor.
          On the morning of June 14, 2003, Taylor left her apartment with the children
to take Aeshia to stay with appellant. Smith testified that Taylor told her that
appellant was angry because Taylor wasn’t going to let him keep Journey as well. 
Later that day, appellant stabbed Taylor to death in the home of Ronald and Pamela
Blackmon, who lived near appellant. Pamela Blackmon testified that she heard
screaming in her front yard followed by knocking on her front door and that, when
her husband opened the door, Taylor rushed into their house followed by appellant. 
Ronald Blackmon testified that appellant went straight to where Taylor was and
grabbed her. He said that he tried to get between them and told appellant to let Taylor
go, but that appellant “pulled out a knife and he start[ed] stabbing her.” Blackmon
said he and his family fled to a neighbor’s house to call police. and, about 10 to 15
minutes later, appellant walked calmly to a house down the street.
          Houston Police Department (“HPD”) Officer Dan R. Hamill, testified that he
responded to a “cutting-in-progress” call at the Blackmon home “a little after 3:00
o’clock” that day. Hamill said that he, another officer, and HPD Sergeant H.L. Mayer
found and arrested appellant in the driveway of a home five houses down from the
crime scene. Mayer testified that the owner of that home where appellant was
arrested said she was appellant’s cousin and that appellant had telephoned her from
the Blackmon house and told her that he had killed Taylor. Ana Elisa Lopez, an
assistant medical examiner, testified that Taylor was stabbed and cut 46 times in her
face and scalp, back, buttocks, chest, abdomen, hands, arms, and vagina.        
                                                       DISCUSSION
Charge Error
          In his first issue, appellant asserts that he is entitled to a new punishment
hearing because the trial court did not sua sponte instruct the jury at the punishment
phase that the State had the burden to prove extraneous offenses and bad acts beyond
a reasonable doubt. Appellant relies on Huizar v. State to support this contention. 
12 S.W.3d 479 (Tex. Crim. App. 2000). 
          Following a finding of guilt, additional evidence may be introduced by both the
State and the defendant at the punishment phase of trial in accordance with article
37.07, section 3 of the Code of Criminal Procedure, which states as follows:
                    Evidence of Prior Criminal Record in all Criminal Cases 
                    After a Finding of Guilty
 
(a) (1) . . . evidence may be offered by the state and the defendant
as to any matter the court deems relevant to sentencing, including
but not limited to the prior criminal record of the defendant, his
general reputation, his character, an opinion regarding his
character, the circumstances of the offense for which he is being
tried, and, notwithstanding Rules 404 and 405, Texas Rules of
Evidence, any other evidence of an extraneous crime or bad act
that is shown beyond a reasonable doubt by evidence to have
been committed by the defendant, or for which he could be held
criminally responsible, regardless of whether he has previously
been charged with or finally convicted of the crime or act. 

Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2004-2005)
(emphasis added). The Code of Criminal Procedure also requires that the jury
receive, in the punishment phase of trial, any “additional written instructions as may
be necessary.” Id. § 3(b). Although the Code of Criminal Procedure does not
expressly require a jury instruction concerning extraneous offenses admitted in the
punishment phase of a trial under section 3(a), “such instruction is logically required
if the jury is to consider the extraneous-offense and-bad act [sic] evidence under the
statutorily prescribed reasonable-doubt standard.” Huizar, 12 S.W.3d at 484. 
“Section 3(a)’s requirement that the jury be satisfied of the defendant’s culpability in
the extraneous offenses and bad acts is the ‘law applicable to the case’ in the non-capital punishment context.” Id. The trial court, thus, must instruct the jury that, at
the punishment phase, extraneous offense and bad act evidence may only be
considered if it meets the statutorily prescribed reasonable-doubt standard. Id. 
Because the trial court bears the responsibility to instruct the jury, the defendant is not
required to make an objection or request under section 3(a) in order to preserve this
type of charging error for appeal. Id.
          While Huizar held that the trial court must sua sponte charge the jury under
section 3(a) when extraneous evidence was admitted in the punishment phase of trial,
this Court extended Huizar by holding that the trial court must sua sponte charge the
jury under section 3(a) when extraneous evidence is used in the punishment phase of
trial, even though the evidence was admitted during the guilt-innocence phase. See
Graves v. State, No. 01-03-00142-CR, 2004 WL 2306698 at *7 (Tex. App.—Houston
[1st Dist.] October 14, 2004, pet. granted) (not yet released for publication). 
          Appellant contends that the trial court erred by not instructing the jury
regarding the State’s burden of proof in the punishment phase of trial concerning the
following extraneous offenses and bad acts that were introduced in the guilt-innocence phase of trial: “(1) Appellant would take the family car and be gone for
extended periods of time, leaving the deceased and their child without provisions
such as food, water, and diapers; (2) Appellant tried to force the deceased to get an
abortion; (3) Appellant was ‘rough’ with the deceased; (4) Appellant held his hand
out like he was ‘hacking’ the deceased and knocked a phone out of her hand; (5)
Appellant menaced the deceased with a box cutter and threatened to kill her; (6)
Appellant would take the deceased’s money out of her purse; (7) Appellant was
unfaithful to the deceased and had a child with another woman; [and] (8) Appellant
threatened to kill the deceased on Mother’s day.” 
          Appellant’s sole contention is that the trial court was required sua sponte to 
instruct the jury on the State’s burden of proof on these eight extraneous acts that
were introduced in the guilt-innocence phase of trial. Appellant does not assert that
this evidence was used or referenced by the State in the punishment phase of trial. 
The eight extraneous acts referred to by appellant did not involve evidence introduced
in the punishment phase, as did Huizar, or evidence admitted at the guilt-innocence
phase and then used or referred to in the punishment phase of trial, as was the case
in Graves. See Huizar, 12 S.W.3d at 484; Graves, 2004 WL 2306698 at *7. Thus,
neither Huizar nor Graves supports appellant’s argument that he is entitled to a
section 3(a) instruction for extraneous evidence used only in the guilt-innocence
phase of trial. 
          We are aware that one court has extended Huizar even further by requiring a
jury instruction any time extraneous-offense evidence is admitted in the trial,
regardless of whether it is admitted in the guilt-innocence phase or the punishment
phase of trial, and regardless of whether the evidence admitted at the guilt-innocence
phase is used or referenced in the punishment phase of trial. See Allen v. State, 47
S.W.3d 47, 50 (Tex. App.—Fort Worth 2001, pet. ref’d) (“If extraneous offense or
bad acts evidence is before the jury, regardless of whether such evidence was
introduced at the guilt-innocence or punishment phase, article 37.07, section 3(a)
requires that the jurors be instructed not to consider such extraneous offenses or bad
acts in assessing the defendant’s punishment unless they find the defendant culpable
for such offenses or bad acts under the statutorily prescribed reasonable doubt
standard.”) (emphasis added). But see, Guzman v. State, No. 04-02-00198-CR, 2003
WL 22336052, at *4 (Tex. App.—San Antonio Oct. 15, 2003, pet. ref’d) (not
designated for publication) (citing Allen but finding no harm because, inter alia, the
State did not use evidence of extraneous acts during punishment phase). We decline
to follow the holding in Allen requiring that a trial court sua sponte give a section 3(a)
jury instruction any time extraneous-offense evidence is admitted in the trial,
regardless of whether it is admitted in the guilt-innocence phase or the punishment
phase of trial, and regardless of whether the extraneous-offense evidence admitted at
the guilt-innocence phase is used or referenced in the punishment phase of trial. 
          Appellant next asserts that the trial court was required sua sponte to give the
extraneous-offense burden-of-proof instruction because the State introduced victim
impact evidence. In the punishment phase of trial, the State called Ronald Blackmon,
the owner of the house where appellant committed the murder. Blackmon testified
that he had to sell his house because his children were afraid and uncomfortable
living there. The State also presented testimony from the deceased’s mother, who
explained how she and the deceased’s children were impacted by appellant’s offense. 
The evidence described here is not evidence of extraneous offenses or bad acts; it is
victim impact evidence and does not require a section 3(a) burden of proof jury
instruction. See Brown v. State, 54 S.W.3d 930, 932 (Tex. App.—Corpus Christi
2001, pet. ref’d). 
          Appellant further asserts that the trial court was required to give sua sponte the
extraneous-offense burden-of-proof instruction because the State elicited evidence
during its cross-examination of appellant’s character witnesses during the
punishment-phase by asking “Have you heard . . .” and “Did you know . . .” type
questions. During the punishment phase of trial, Randall King testified on behalf of
appellant regarding appellant’s relationship with Taylor, stating that the two were
“not on bad terms.” During cross-examination, the State asked King if he knew about
a string of “kick” burglaries appellant committed in the 1990s. King acknowledged
that he knew about those offenses. The State also questioned King about whether he
knew that appellant had assaulted a man with a brick, and King replied that he did not
know that. The State asked King if he knew that appellant had pulled a gun on
Taylor’s brother and King denied knowing about such an incident. 
          When an attorney has a good-faith basis for his questions, a witness’s character
testimony may be impeached by asking “Have you heard . . .” and “Did you know .
. .” type questions. See Wilson v. State, 71 S.W.3d 346, 350-51 (Tex. Crim. App.
2002) (noting that punishment-phase character witness’s awareness of specific
instances of conduct may be tested on cross-examination and “not only was the State
not required to prove to the jury that the acts actually occurred, but it would have
been improper for the State to attempt to do so”). Appellant does not assert that the
State lacked the required good-faith basis for these questions or that the questions
were not relevant to the character traits at issue in the case. See In re G.M.P., 909
S.W.2d 198, 210 (Tex. App.—Houston [14th Dist.] 1995, no pet.). Thus, we hold
that the testimony complained of resulted from the impeachment of character
witnesses through “Have you heard . . .” and “Did you know . . .” type questions, and
did not require an extraneous-offense burden-of-proof jury instruction. 
          Finally, appellant relies on the assertion that the trial court was required sua
sponte to give an extraneous offense burden of proof jury instruction because the
State moved to re-admit, in the punishment phase of trial, all of the evidence admitted
during the guilt-innocence phase. The State’s punishment-phase re-offer of all guilt-innocence evidence had no effect on the use of that evidence in the punishment phase
of trial. “It is clear that in assessing punishment the jury may consider all of the
evidence adduced at trial on guilt or innocence.” Duffy v. State, 567 S.W.2d 197, 208
(Tex. Crim. App. 1978). In other words, the evidence admitted in the guilt-innocence
phase of trial may be considered by the jury during the punishment phase regardless
of whether the State moves to re-admit it. Thus, we see no distinction in our
evaluation of the evidence merely because the State moved to re-admit it in the
punishment phase of trial.
          We hold that the trial court did not err by not instructing the jury in the
punishment phase of trial that extraneous offenses and bad acts could not be
considered unless the State proved the offenses or bad acts beyond a reasonable
doubt. We overrule appellant’s first issue. 
Ineffective Assistance of Counsel
          In his second issue, appellant contends that his trial counsel provided
ineffective assistance. Specifically, appellant asserts ineffective assistance because
his counsel did not: (1) request reasonable doubt instructions on extraneous offenses
and bad acts, (2) object to the victim impact testimony of Ronald Blackmon and
Barnes, (3) object to improper jury argument made by the State, and (4) request an
instruction on sudden passion.


 
          In addressing this issue, we begin by noting that appellant’s counsel did not err
in not requesting a sudden passion instruction because the evidence did not raise the
issue. Appellant correctly cites Trevino v. State for the proposition that a sudden
passion charge should be given at punishment if there is some evidence to support it,
even if that evidence is weak, impeached, contradicted, or unbelievable. 100 S.W.3d
232, 238 (Tex. Crim. App. 2003). Appellant claims that his demeanor and actions
after he stabbed Taylor to death, and the comment of one police officer that, from his
viewing of the crime scene, it looked like the perpetrator was in a “rage,” were
sufficient to raise the issue of sudden passion. We disagree. 
          A.      Sudden Passion Instruction 
          Sudden passion is raised only when there is evidence that a defendant acted
under the immediate influence of sudden passion arising from an adequate cause. See
Saldivar v. State, 980 S.W.2d 475, 505 (Tex. App.—Houston [14th Dist.] 1998, pet.
ref’d) (holding that issue of sudden passion was not raised because evidence showing
victim and appellant argued was not sufficient to establish adequate cause). “Sudden
passion” means passion directly caused by and arising out of provocation by the
victim or another acting with the victim, and which arises at the time of the offense
and is not solely the result of former provocation. Tex. Penal Code Ann. §
19.02(a)(2) (Vernon 2003). In other words, sudden passion is “an excited and
agitated mind at the time of the killing caused by an act of the deceased.” Hobson v.
State, 644 S.W.2d 473, 478 n. 10 (Tex. Crim. App. 1983). “Adequate cause” is cause
that would commonly produce a degree of anger, rage, resentment, or terror in a
person of ordinary temper, sufficient to render the mind incapable of cool reflection. 
Tex. Penal Code Ann. § 19.02(a)(1) (Vernon 2003). 
          In this case, there is no evidence that Taylor engaged in a provocative act that
would have been adequate cause for appellant’s asserted sudden passion. The only
evidence is that Taylor had told appellant earlier in the day that she would not let
appellant watch both children. Appellant’s stabbing Taylor to death because she
would not allow him to babysit Journey is a response that “is not objectively common
in the ordinary, reasonable person [and] does not support a voluntary manslaughter
issue.” See Saldivar, 980 S.W.2d at 506 (citing Willis v. State, 936 S.W.2d 302, 308
(Tex. App.—Tyler 1996, pet. ref’d)). Further, the evidence demonstrated that Taylor
had refused appellant’s request that he babysit Journey hours before appellant
murdered her. This refusal was not a provocation “which arises at the time of the
offense,” but a “former provocation,” if a provocation at all. See Tex. Penal Code
Ann. § 19.02(a)(2). 
          B.      Remaining Claims of Ineffective Assistance
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). Appellant must show that (1) counsel’s performance was so deficient
that he was not functioning as acceptable counsel under the sixth amendment, and (2)
but for the counsel’s error, the result of the proceedings would have been different. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. “Under Strickland, the defendant
must prove, by a preponderance of the evidence, that there is, in fact, no plausible
professional reason for a specific act or omission.” Bone v. State, 77 S.W.3d 828, 836
(Tex. Crim. App. 2002). Our review of appellant’s trial counsel’s performance must
be highly deferential. Strickland, 466 U.S. at 690, 104 S. Ct. at 2065. We determine
the reasonableness of counsel’s challenged conduct in context and view it as of the
time of counsel’s conduct. Id. We are to assume a strategic motive if any can be
imagined and find counsel’s performance deficient only if the conduct was so
outrageous that no competent attorney would have engaged in it. Bone, 77 S.W.3d
at 833 n.13. The policy behind this assumption is that “[i]ntensive scrutiny of counsel
and rigid requirements for acceptable assistance could dampen the ardor and impair
the independence of defense counsel, discourage the acceptance of assigned cases,
and undermine the trust between attorney and client.” Strickland, 466 U.S. at 690,
104 S. Ct. at 2065. 
          In this case, the record is silent as to why appellant’s trial counsel took, or
failed to take, the actions that, according to appellant, are proof of ineffective
assistance of counsel. Appellant has not overcome the strong presumption that his
counsel’s conduct falls within a wide range of reasonable professional assistance and
might be considered sound trial strategy. See Bone, 77 S.W.3d at 836. To find that
appellant’s counsel was ineffective based on the stated grounds would call for
speculation, in which we will not engage. See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994); Lumpkin v. State, 129 S.W.3d 659, 665 (Tex.
App.—Houston [1st Dist.] 2004, no pet.).
          We overrule appellant’s second issue.
                                                     CONCLUSION
          We affirm the judgment of the trial court. 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Alcala.
 
Publish. Tex. R. App. P. 47.2(b).