Affirmed and Memorandum Opinion filed January 31, 2006









Affirmed and Memorandum Opinion filed January 31, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00528-CR

_______________

 

MARCELINO HERNANDEZ MONREAL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

_____________________________________________________

 

On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause No. 03CR2274

_____________________________________________________

 

M E M O R A N D
U M   O P I N I O N

Appellant, Marcelino Hernandez Monreal, appeals a conviction
for aggravated sexual assault of a child. 
In four issues, appellant contends that the trial court erred by (1)
refusing to suppress his videotaped statement, (2) failing to grant his motion
for a directed verdict, (3) admitting the videotaped statement of the
complainant, and (4) designating the complainant=s mother as the outcry witness under
Article 38.072 of the Texas Code of Criminal Procedure.  Because all dispositive issues are clearly
settled in law, we issue this memorandum opinion and affirm.  See Tex.
R. App. P. 47.4.  

 








I.  Factual Background

Appellant=s conviction stems from an incident occurring on or about
January 15, 2003, while he and his wife were babysitting a then four-year-old
family friend, N.B.[1]  At trial, N.B. testified that appellant Atouched something and it hurt.@ 
She was then shown a diagram of the human form and asked to circle the
area where appellant touched her.  She
circled the area corresponding to the female genitalia.[2]   When asked by the prosecutor whether
appellant touched her on the inside or outside of the area circled on the
diagram, N.B. responded Aoutside.@  N.B. also testified
that appellant touched her over her shorts, but that he touched her on her skin
under her underwear. 

N.B. complained about the incident immediately after it
occurred.  First, N.B. told appellant=s wife that appellant had touched
her, but appellant=s wife did nothing. 
The next morning, while N.B.=s mother was dressing her for school,
N.B. told her to be careful when removing her panties because appellant had
touched her there.  When N.B.=s mother asked her what happened,
N.B. stated that appellant had touched her with his finger and that it had
hurt, and then showed her mother how appellant had moved her underpants and
where he had touched.  N.B. also started
crying and said that she did not want to go back to appellant=s house.  An examination of N.B.=s underpants revealed what appeared
to be spots of blood. 








N.B.=s parents took N.B. to the hospital where she was examined by
a forensic nurse.  N.B. told the nurse
that her private parts hurt, that appellant had touched her there a couple of
times, and that she told her mother that morning.  Although the nurse=s genital exam revealed no signs of trauma,
the nurse testified that the finding was not necessarily significant because it
is possible to have penetration of the female sexual organ that is not
traumatic.  The nurse contacted the
Dickinson Police Department, which began an investigation.

A few weeks later, a forensic interviewer from the Children=s Assessment Center conducted a taped
interview of N.B. in Spanish.  During the
interview, N.B. again recounted the incident. 
She stated that appellant had touched her private parts inside and that
it had hurt and a little blood came out. 
She also said that appellant asked her if she wanted him to touch her
and whether she liked it, and although she told him no, appellant touched her
anyway.  N.B. also alluded to other
incidents of appellant=s touching her.  This
videotape was played and translated for the jury over appellant=s objection.

After receiving the tape from the Children=s Assessment Center, an officer from
the Dickinson Police Department contacted appellant at home and asked him for
an interview, either in appellant=s home or the police station.  Appellant stated that he would be running
errands that day in Dickinson and offered to come by the police station to talk
to the police.  Appellant arrived at the
police station in his own vehicle.  At
the time, appellant was not under indictment or arrest, and he was free to
leave the police station or terminate the interview.








Appellant=s interview was videotaped and lasted for approximately
thirty minutes.  At the beginning of the
videotape, the officer read appellant his Miranda warnings, and asked appellant
to Ado me a favor and sign here.@ 
Appellant signed the waiver of rights, indicating that he understood the
warnings and waived the protections. 
When appellant asked why the statement was being taped, the officer told
him that he was taping so that they could go back and look at the statement
some time in the future.  During the
interview, appellant asked the police officer several questions, such as, Awhat will happen to me?@ Ado I need a lawyer?@ and Aam I going to be arrested?@ 
The police officer was noncommittal in response to each question,
answering, AI don=t know@ and AI can=t promise anything.@ 
When appellant asked, Adoes this mean I=m going to jail?@ the officer answered Ano.@ 
After the interview, the police officer walked appellant to his car and
allowed him to leave.

Appellant was indicted for aggravated sexual assault of a
child and pled not guilty to the offense. 
Prior to trial, the court heard appellant=s motion to suppress his videotaped
statement and specifically found appellant=s statement was voluntary.  The court entered findings of fact and
conclusions of law as follows: (1) appellant came to the police station without
police insistence, (2) he was not indicted, under arrest or in custody at the
time he made the statement, and (3) officers read all required legal warnings
and appellant voluntarily waived his rights prior to giving his statement.  Appellant=s videotaped statement was admitted
into evidence.

A jury found appellant guilty of aggravated sexual assault of
a child.  The trial court conducted the
punishment phase, accepted appellant=s guilty plea in connection with a
previous offense of indecency with a child, and imposed a life sentence on
appellant.  This appeal ensued.

II.  Analysis

A.        Challenge to
Legal Sufficiency of Evidence

In his second issue, appellant contends the trial court erred
in failing to grant his motion for directed verdict, arguing that the State
failed to prove Apenetration@ of the female sexual organ. 
See Tex. Penal Code Ann.
' 22.021 (Vernon 2003) (defining the
essential elements of aggravated sexual assault).[3]









We review a complaint that the trial court erred in denying a
motion for instructed verdict as a challenge to the legal sufficiency of the
evidence.  Williams v. State, 937
S.W.2d 479, 482 (Tex. Crim. App. 1996). 
In reviewing the legal sufficiency of the evidence, we evaluate the
evidence in the light most favorable to the verdict to Adetermine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.@  King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
We do not re-weigh the evidence to substitute our judgment for that of
the jury.  Id.  We will not engage in a second evaluation of
the weight and credibility of the evidence, but only ensure that the jury
reached a rational decision.  Muniz v.
State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

Penetration may be proved circumstantially, and there is no
requirement that the victim be able to testify that penetration occurred.  Villalon v. State, 791 S.W.2d 130, 133B34 (Tex. Crim. App. 1990) (citing Nilsson
v. State, 477 S.W.2d 592, 595B96 (Tex. Crim. App. 1972)).  Moreover, penetration of the vaginal canal is
not required to prove Apenetration@ under the Texas Penal Code. 
Vernon v. State, 841 S.W.2d 407, 409B10 (Tex. Crim. App. 1992).  Rather, Afemale sexual organ@ encompasses the entire female
genitalia, including the vagina and vulva, and Apenetration@ is defined as touching beneath the
fold of the external genitalia.  See
id.; Karnes v. State, 873 S.W.2d 92, 96 (Tex. App.CDallas 1994, no pet.); Everage v.
State, 848 S.W.2d 357, 358 (Tex. App.CAustin 1993, no pet.); Aylor v.
State, 727 S.W.2d 727, 729 (Tex. App.CAustin 1987, pet. ref=d).

Here, there was no medical evidence of vaginal penetration or
trauma, and N.B. testified that appellant did not touch her Ainside.@ 
However, a nurse testified that it was possible for penetration of the
female sexual organ to occur without any signs of trauma.  Further, N.B.=s mother, as the outcry witness,
testified that N.B. told her appellant had touched Aher parts.@ 
She further explained that N.B. showed her how appellant had moved N.B.=s panties and, using his finger, had
touched N.B.=s Avagina, her parts.@ 
N.B.=s mother said that N.B. was Ascared and shaking@ when she told her, and said that she
Adidn=t want to go back there [to appellant=s house] anymore.@ 
N.B.=s mother also testified that N.B.=s vaginal area appeared red.  








Outcry testimony alone can be sufficient to sustain a
conviction for aggravated sexual assault. 
Rodriguez v. State, 819 S.W.2d 871, 873B74 (Tex. Crim. App. 1991); Kimberlin
v. State, 877 S.W.2d 828, 831B32 (Tex. App.CFort Worth 1994, pet. ref=d). 
Here, in addition to the outcry testimony, the State introduced evidence
that the panties N.B. wore during and after the incident had spots in the
crotch area that tested positive for blood. 
The State also introduced a videotaped interview with N.B.  On the videotape, N.B. said that appellant
touched her with his finger inside her Apancito,@[4] or private parts, and that Aa little blood came out.@ 


N.B. also testified at trial. 
She said that appellant touched her skin under her underwear, and demonstrated
where appellant touched her by drawing a circle around the genital area of a
diagram of a girl.  N.B. also testified
that appellant touched her Aover@ her shorts and that he did not touch her Ainside.@ 
Appellant contends that we should disregard N.B.=s testimony because it was Aconfused and contradictory.@ 
However, N.B. was five years old when she testified, and child victims
are not expected Ato testify with the same clarity and ability as is expected
of mature and capable adults.@  Villalon, 791
S.W.2d at 134.  As the exclusive judge of
the credibility of witnesses, the jury was free to accept or reject all or any
part of N.B.=s testimony.  See Muniz, 851 S.W.2d at 246; Tear,
74 S.W.3d at 561.

Viewing the outcry testimony, N.B.=s trial testimony, the videotaped
interview, and the physical evidence in the light most favorable to the
verdict, a rational jury could have concluded beyond a reasonable doubt that
appellant penetrated N.B.=s sexual organ with his finger.  Accordingly, we find the evidence legally
sufficient to sustain the conviction for aggravated sexual assault.  Appellant=s second issue is overruled. 








B.        Admission of
Appellant=s Videotaped Statement

In his first issue, appellant contends that the trial court
erred in refusing to suppress his videotaped statement, claiming that his
statement was not voluntary because the officer Adodged a direct truthful answer@ to appellant=s questions, and appellant became
emotional and/or physically ill during the interview.  

We review the trial court=s ruling on a motion to suppress
evidence under an abuse‑of‑discretion standard.  Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996).  If supported
by the record, a trial court=s ruling on a motion to suppress will not be overturned.  Hill v. State, 902 S.W.2d 57, 59 (Tex.
App.CHouston [1st Dist.] 1995, pet. ref=d). 
At a suppression hearing, the trial judge is the sole finder of
facts.  Arnold v. State, 873
S.W.2d 27, 34 (Tex. Crim. App. 1993); Hill, 902 S.W.2d at 59.  The trial judge is free to believe or
disbelieve any or all of the evidence presented.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990).  We give almost
total deference to the trial court=s determination of historical facts
that the record supports, especially when the trial court=s findings turn on evaluating a
witness=s credibility and demeanor.  State v. Ross, 32 S.W.3d 853, 856
(Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  We give the same amount of
deference to the trial court=s ruling on mixed questions of law and fact if the question
is resolved by evaluating credibility and demeanor.  Ross, 32 S.W.3d at 856.








Here, the trial court found that appellant=s statement was voluntary.  Voluntariness is decided by considering the
totality of the circumstances under which the statement was obtained.[5]  Creager v. State, 952 S.W.2d 852, 855
(Tex. Crim. App. 1997); King v. State, 831 S.W.2d 891, 894 (Tex. App.CHouston [14th Dist.] 1992, no
pet.).  AThe ultimate question is whether the
suspect=s will was overborne.@ 
Creager, 952 S.W.2d at 856. 

The trial court did not abuse its discretion in determining
that appellant=s statement was voluntary.  Appellant came to the police station of his
own accord; he was not under arrest or indictment at the time.  He was also free to leave or terminate the
interview whenever he wished.  See,
e.g., Ramirez v. State, 116 S.W.3d 55, 58 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d) (fact that appellant came to the
police station on his own and was free to leave supported finding of
voluntariness).  Appellant asked the
officer a series of questions, to which the officer responded with either the
truth (AI can=t promise anything@), or with a noncommittal answer (AI don=t know@). 
The officer=s answers to appellant=s questions were not
objectionable.  See, e.g., Creager,
952 S.W.2d at 856 (noting that even Atrickery or deception does not make a
statement involuntary unless the method was calculated to produce an untruthful
confession or was offensive to due process@). 
The interview lasted approximately thirty minutes, during which
appellant was neither mistreated nor denied basic necessities.  When appellant complained of feeling a little
chest pain, the officer asked him whether he was all right and whether he
needed any attention, and appellant did not indicate that he did.[6]  Considering the circumstances of the
interview, including the demeanor of both the appellant and the questioning
police officer, the trial court=s conclusion that the statement was voluntary is not an abuse
of discretion.  We accordingly overrule
appellant=s first issue.   








C.        Admission of
Complainant=s Videotaped Statement

In his third issue, Appellant complains that the trial court
erred by admitting the videotaped interview of N.B. made at the Children=s Assessment Center.  Appellant complains that there was no finding
that N.B. was Aunavailable@ to support admission of the
videotape pursuant to article 36.071 of the Texas Code of Criminal
Procedure.  Appellant also complains that
the tape was too broad to be admitted as a prior consistent statement.[7]


Trial court rulings on the admission of evidence are reviewed
for an abuse of discretion.  Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  Under this standard, we are limited to
determining whether the record supports the trial court=s ruling.  Coffin v. State, 885 S.W.2d 140, 149
(Tex. Crim. App. 1994).  We may reverse
only when Athe trial judge=s decision was so clearly wrong as to
lie outside that zone within which reasonable persons might disagree.@ 
Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)
(quoting Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App.
1992)).  In addition, where the trial
court fails to expressly state the basis for its evidentiary ruling, we must
uphold the ruling if it is reasonably supported by the record and is correct
under any theory of the law applicable to the case.  Ross, 32 S.W.3d at 855B56.








The admission of the videotape in this case was not governed
by article 38.071 of the Texas Code of Criminal Procedure because N.B.
testified in court prior to the videotape=s admission.[8]
 See Tex. Code Crim. Proc. Ann. art. 38.071 (Vernon 2005).  Where a child victim is available to testify
at trial, the statute does not apply.  See
Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (statute did not apply where
complainant Atestified in court following the
viewing of the videotape@).  Under the plain
language of the statute, it applies only to proceedings in which the court
determines that a child would be Aunavailable to testify.@ Tex. Code
Crim. Proc. Ann. art.
38.071 ' 1.

The trial court instead admitted the videotape as a prior
consistent statement of N.B. after N.B. had been impeached on
cross-examination.[9]  The admission of prior consistent statements
is governed by Texas Rule of Evidence 801(e)(1)(B), which provides that prior
witness statements are admissible where the statement is Aconsistent with the declarant=s testimony and is offered to rebut
an express or implied charge of recent fabrication or improper influence or
motive.@  Tex. R. Evid. 801(e)(1)(B); see also Graves v. State, __
S.W.3d __, No. 01-03-00142-CR, 2004 WL 2306698, at *3 (Tex. App.CHouston [1st Dist.] October 14, 2004,
pet. stricken) (analyzing objection to videotape of child victim as a prior
consistent statement under Rule 801, as opposed to article 38.071, where child
testified at trial).








The trial court did not err in admitting the videotape as a
prior consistent statement under Rule 801(e)(1)(B).  Appellant attacked N.B.=s credibility, suggesting that her
memory was not good and that she may have been improperly influenced by her
mother.  On cross-examination, N.B.
admitted that she did not remember what happened that day, but that her mother
had told her what to Asay today@ at trial.  Under these
circumstances, the trial court properly admitted the videotaped statement as a
prior consistent statement.  See
Graves, 2004 WL 2306698, at *3 (AWe hold that the videotape is
admissible under rule of evidence 801(e)(1)(B) as a prior consistent statement@ because the defense challenged the
child=s credibility); see also Dowthitt,
931 S.W.2d at 264 (upholding admissibility of videotape as prior consistent
statement); Wylie v. State, 908 S.W.2d 307, 310 (Tex. App.CSan Antonio 1995, pet. ref=d) (holding videotape admissible as
prior consistent statement where defense challenged child=s credibility).








Appellant cannot now complain that the videotape was Atoo broad@ to be a prior consistent statement
because his trial objection did not preserve error on this point.  To properly preserve an issue for appellate
review, there must be a timely objection that specifically states the legal
basis for the objection.  Rezac v.
State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).  An objection stating one legal basis may not
be used to support a different legal theory on appeal.  Id. 
Instead, the trial objection must have drawn the trial court=s attention to the particular complaint
raised later on appeal.  Little v.
State, 758 S.W.2d 551, 564 (Tex. Crim. App. 1988).  The complaint appellant raises on appeal is
fundamentally different from the objections he urged in the trial court.  Although appellant lodged various conclusory
objections to the admission of the videotape, he never complained that the tape
was too broad for the purpose for which it was being admitted, or gave the
trial court an opportunity to limit or redact the tape in accordance with its
use to rehabilitate N.B.=s credibility.[10]  Although some of N.B.=s statements on the videotaped
interview were not consistent with her trial testimony, Athe trial court need never sort through
challenged evidence in order to segregate the admissible from the excludable.@ 
Willover v. State, 70 S.W.3d 841, 847 (Tex. Crim. App.
2002).  If the evidence offered and
challenged contains both admissible and inadmissible evidence, Athe trial court may safely admit it
all or exclude it all.@  Id.  Because appellant did not specifically object,
we hold that appellant has waived any error. 
We overrule appellant=s third issue.

D.        Designation of
Outcry Witness

In his fourth issue, appellant contends that the trial court
erred by designating the complainant=s mother as an outcry witness because
N.B. first complained to appellant=s wife that appellant had touched
her.

Article 38.072 of the Texas Code of Criminal Procedure
creates an Aoutcry exception@ to the hearsay rule in prosecutions
for sexual offenses committed against a child twelve years of age or
younger.  Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005).  Article 38.072 provides that outcry testimony
from the first adult (other than the defendant) to whom the child makes
statements describing the alleged offense will not be inadmissible because of
the hearsay rule if the other requirements of the rule are met.[11]

The trial court has broad discretion to determine which of several
witnesses is an outcry witness, and we will not disturb its decision absent a
clear abuse of discretion.  Garcia v.
State, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); Hayden v. State,
928 S.W.2d 229, 231 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d). 
An abuse of discretion will not be found unless the trial court=s decision is outside the zone of
reasonable disagreement.  See
Weatherred, 15 S.W.3d at 542; Tear, 74 S.W.3d at 558. 








The trial court held a hearing outside the jury=s presence to determine whether N.B.=s mother was the proper outcry
witness.  See Tex. Code Crim. Proc. Ann. art. 38.072 ' 2(b)(1)(C) (providing that the trial
court must find, in a hearing conducted outside the presence of the jury, the
outcry statement is reliable Abased on the time, content and circumstances of the statement@). 
At the hearing, N.B.=s mother testified that while she was dressing N.B. for
school, N.B. said to be careful when removing her panties because she might
hurt her.  N.B.=s mother asked what had
happened.  N.B. said that area hurt
because appellant had touched her.  N.B.=s mother noticed that N.B.=s vagina was red and her panties were
dirty.  She asked N.B. how appellant had
touched her.  N.B. replied that she had
been sitting in appellant=s lap when he used his finger to touch her and hurt her.  On direct examination, N.B.=s mother testified that N.B. told her
she had immediately told appellant=s wife that appellant touched her,
and appellant=s wife responded that they would give
him a Apow-pow@ (e.g., a swat).  On cross-examination, the following exchange
occurred:

[Defense Attorney]: 
And she told you that she B that
she told her grandmother [appellant=s wife]
that [appellant] had put his fingers inside of her private parts; is that
correct?

[N.B.=s Mother]:  Yes.

[Defense Attorney]: 
Okay.  And so, basically [N.B.]
told you the next morning the same thing that she had told her grandmother
[appellant=s wife] the evening before?

[N.B.=s Mother]: Yes.  To the grandmother [appellant=s wife], she told in the afternoon
when he had done it.  But when I came
back from work, she was already asleep. 
So, she told me the next day.

Over appellant=s objection, the trial court
designated N.B.=s mother as the proper outcry witness, finding that N.B. related
more detail to N.B.=s mother than appellant=s wife.  We hold that the trial court did not err in
making this determination.

The outcry exception applies Aonly to statements that describe the
alleged offense.@  Tex. Code Crim. Proc. Ann. art. 38.072 ' 2(a); see also Chapman v. State,
150 S.W.3d 809, 816 (Tex. App.CHouston [14th Dist.] 2004, pet ref=d). 
The statement Amust be more than words which give a general allusion that
something in the area of child abuse was going on.@ 
Garcia, 792 S.W.2d at 91; Hayden, 928 S.W.2d at 231.  To be admissible, the statement must describe
the offense in some discernible manner.  Garcia,
792 S.W.2d at 91; Hayden, 928 S.W.2d at 231.








Here, the record is void of specific details of the
statements made by N.B. to appellant=s wife.  See Garcia, 792 S.W.2d at 91 (holding
that where the record was void of specific details of statements made to an
individual, the individual was not properly designated an outcry witness).  Although N.B.=s mother stated that she believed
N.B. had told appellant=s wife Abasically . . . the same thing@ that N.B. told her, she did not
provide specific details as to the content of N.B.=s statement.  N.B.=s mother also testified that N.B.
told appellant=s wife that appellant Aput his fingers inside her private
parts.@ 
While this statement amounts to an allegation of abuse, it is not clear
whether N.B. also described to appellant=s wife the time, place, and
circumstances surrounding the abuse.  See, e.g., Smith v. State, 131
S.W.3d 928, 930B31 (Tex. App.CEastland 2004, pet. ref=d) (holding a child advocate the
proper outcry witness although the victim first told mother that A[appellant] had been performing oral
sex on him for about a year@); Castelan v. State, 54 S.W.3d 469, 475B76 (Tex. App.CCorpus Christi 2001, no pet.)
(counselor proper outcry witness even though victim had first told grandmother
that appellant Aput his thing in through the back@); Sims v State, 12 S.W.3d
499, 500 (Tex. App.CDallas 1999, pet. ref=d) (holding a counselor the proper
outcry witness even though victim first told mother that appellant Ahad touched her private parts@).

The burden is on the defendant to introduce evidence that a
prior statement Awas more than just a general allusion to abuse.@ 
In the Matter of Z.L.B., 102 S.W.3d 120, 123 (Tex. 2003) (per
curiam).  N.B.=s mother was not present when N.B.
told appellant=s wife about the abuse, and no
testimony was heard at the hearing from appellant=s wife or N.B.  In the absence of further details as to the
content of N.B.=s statement to appellant=s wife, the evidence Aapparently did not, in context, and
in the trial court=s view, amount to more than the general allusion heretofore
condemned.@ 
Garcia, 792 S.W.2d at 91.  








The trial court=s designation of N.B=s mother as the outcry witness was
not outside the zone of reasonable disagreement, and we will not disturb the
ruling on appeal.  See Garcia, 792
S.W.2d at 91 (no abuse of discretion when complainant testified that she told
her teacher Awhat happened@ before she told the designated
outcry witness); In the matter of Z.L.B, 102 S.W.3d at 122B123 (no abuse of discretion when
testimony at the hearing revealed that complainant already Ahad told mommy@ before he told the designated outcry
witness).  Accordingly, appellant=s fourth issue is overruled. 

The judgment of the trial court is affirmed.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Memorandum Opinion filed January 31, 2006.

Panel consists of
Justices Edelman, Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  Although N.B.
refers to appellant and his wife as her grandparents, they are not related to
N.B., but were simply family friends.





[2]  The record
does not contain an exhibit of the diagram with the circle drawn by N.B. or
otherwise reflect the area circled. 
However, the parties do not dispute that N.B. circled the genital area.





[3]  Because there
is no dispute that the remaining elements of the offense were satisfied, we do
not discuss them in this opinion.





[4]  N.B. stated on
the videotape that Apancito@ was her
word for the parts of the body that nobody should touch.  N.B.=s mother
also testified that N.B. used Apancito@ to
refer to her vagina or her private parts. 






[5]  The circumstances
a court may consider include the length of a suspect=s detention, incommunicado or prolonged interrogation,
denying a family access to a defendant, refusing a defendant=s request to telephone a lawyer or family, and
physical brutality.  A defendant=s characteristics and status, as well as the conduct
of the police, are also important concerns. 
See Ramirez, 116 S.W.3d 55, 59 (Tex. App.CHouston [14th Dist.] 1998 pet. ref=d) (citing Armstrong v. State, 718 S.W.2d 686,
693 (Tex. Crim. App. 1985)).





[6]  Of course, Aa failure to cut off questioning after a suspect
invokes his right to remain silent violates his rights and renders any subsequently
obtained statements inadmissible.@  Dowthitt v. State, 931 S.W.2d 244, 257
(Tex. Crim. App. 1996).  Here, however,
appellant does not dispute the trial court=s
determination that he was not in custody, so he was free to leave at any
time.  In addition, appellant has pointed
to no statement that unambiguously invokes his right to remain silent.  See id. (statements that suspect
believed he was Aphysically unable to continue@ is not an unambiguous statement that Ahe desired to quit@).  On the contrary, when appellant wished to
terminate the interview and leave the police station, he did.  





[7]  Appellant
frames his third issue objecting to the admission of N.B.=s videotaped statement as an objection based on the
admission of extraneous offenses referenced in the tape.  Appellant does not, however, develop this
argument or offer any authority establishing that the admission of extraneous
offenses was improper under the applicable statute.  See Tex.
Code Crim. Proc. Ann. art. 38.37 ' 2
(Vernon 2005).  Appellant has the duty to
cite specific legal authority and to provide legal argument based upon that
authority.  See Tex. R. App. P. 38.1(h); Rhoades v.
State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996).  Appellant=s
failure to offer any relevant authority on this point waives the issue on
appeal.  See Smith v. State, 683
S.W.2d 393, 410 (Tex. Crim. App. 1984).





[8]  We do not rule
on the issue of whether a complainant may be Aunavailable@ under the statute based on the content of her
testimony at trial because it is not necessary to the analysis concerning the
admission of the videotape.





[9]  The trial
court did not expressly state the basis for its ruling, but did overrule
appellant=s objections to the admission of the statement in
response to the State=s argument that the videotaped statement was a prior
consistent statement of the witness Ato rebut
the implication that she=s been coached and told what to say.@ 





[10]  Appellant=s counsel made the following objections to the
admission of the videotape: (1) witness availability; (2) improper bolstering;
and (3) improper admission of extraneous offenses under Texas Rule of Evidence
404, with undue prejudice under Rule 403. 
At no point did appellant=s
counsel complain that the tape was broader than necessary to rehabilitate the
witness, or point to any particular portions of the tape that he believed
should be omitted because they were unnecessary to counter the impeachment. 





[11]  Because
appellant=s only complaint on appeal concerns the designation of
the outcry witness, we do not rule on whether the other requirements of Article
38.072 were met in this case.