

# NUMBER 13-11-225-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BENNIE LEE WALKER,**                                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                               **Appellee.**

---

## On appeal from the 226th District Court
## of Bexar County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Vela, and Perkes**
**Memorandum Opinion by Justice Vela**

A jury found appellant, Bennie Lee Walker, guilty of the third-degree felony of

attempted burglary of a habitation.   S*ee* TEX. PENAL CODE ANN. §§ 15.01(a) (West 2003);

30.02(a)(1). After finding he had one prior felony conviction, the jury assessed punishment at ten years' imprisonment. In four issues, appellant argues: (1) the evidence is legally insufficient to support his conviction; (2) he received ineffective assistance of counsel; (3) the State made improper remarks during closing argument; and (4) the trial court failed to give a reasonable-doubt instruction in the punishment charge. We affirm.[1]

## I. FACTUAL BACKGROUND

### A. State's Evidence

About March 7, 2010, Barbara Kirk lived next door to Donald Gray, who was on a trip to Louisiana. At 3:38 a.m. that day, Kirk saw a cream or white-colored, four-door Cadillac in Gray's driveway. It backed up and then accelerated forward, hitting Gray's garage door. After the Cadillac did this four times, its driver exited the car. Kirk testified that at that point, "I was able to get a good look at his face. . . ." The Cadillac's driver went to an opening, which was at the right side of the garage door and "leaned around . . . to try and get in, but it [the opening] wasn't large enough, so he got back in the car and left."

After the incident, Detective Lawrence Saiz showed Kirk a photo lineup, and she selected appellant as the man who she saw driving the Cadillac into Gray's garage door. In addition, during the State's case-in-chief at guilt-innocence, Kirk identified appellant, who was seated in the courtroom, as the man she saw driving the Cadillac into Gray's garage door.

---

[1] This appeal was transferred from the Fourth Court of Appeals pursuant to a docket-equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

On cross-examination, when defense counsel asked Kirk, "When he [appellant] went in front of that garage, did he just look in and determine well, there's not enough room?", she said, "No, sir. He didn't just look in. He tried to manipulate himself in." She said he "[t]ried to squeeze in."

When Donald Gray returned from Louisiana, he saw that his home's garage door "had been caved in." He testified that "whenever the car hit the garage door, it [the garage door] kind of mushroomed and just knocked it off its rollers, rollers off of the hinges. And, of course, it couldn't be opened or closed." When the prosecutor asked him, "Can you tell the jury whether or not the garage door would have still kept someone outside of the home?," he replied, "Yeah, I think so, . . . ." He said "there wasn't enough room between the garage door and the side of the house to get through. It was too narrow, so no one could get into the garage. You could see into the garage, but you couldn't get in there because it was too narrow." When asked, "[C]an you describe to the jury about how much space there was between the home and the garage door as a result of the damage?," he said, "There was only probably six to twelve inches. It was just enough that you could see into the garage, but . . . no one could crawl in past it." When asked, "Could you reach an arm into it", he said, "I think so." Gray testified that he did not give appellant permission to enter his house, and he never gave appellant permission "to drive his car into" his garage door.

Detective Saiz testified that when he showed the photo lineup to Kirk, she "went right to the photograph of the suspect and circled it and said, "'That's the guy.'" When the prosecutor asked Detective Saiz, "The photograph that she identified is the photograph of

3

who?", he said, "Bennie Lee Walker." Detective Saiz testified appellant's car had "some damage, some scratch marks on the bumper, the driver's side front bumper."

## B. Appellant's Evidence

Matthew Wolak and appellant were roommates at the time of this offense. They shared a one-bedroom apartment; Wolak slept on the sofa, and appellant slept in the bedroom. Wolak, who claimed to have a "photographic memory," testified that on the day of the offense, he arrived at the apartment between 12:30 a.m. and 1:00 a.m. At that time, appellant and a girlfriend, Nicole Garibay, were at the apartment. Appellant and Garibay went into the bedroom between 1:30 a.m. and 2:00 a.m., and Wolak fell asleep on the sofa no later than 2:15 a.m. Wolak testified he would have heard appellant leave the apartment. He explained that "[t]hey [appellant and Garibay] would have to get past me and shut the door." Wolak heard appellant and Garibay leave the apartment between 8:00 a.m. and 9:00 a.m. He said there were no scratches or damage to the front end of appellant's car.

On cross-examination, Wolak testified that if appellant would have left the apartment, "I would have known." When the prosecutor asked Wolak, "[W]hy do you say that with such certainty?", he said, "Because . . . when I sleep on somebody's couch, I'm not a sound sleeper. . . . And that's how I would know if I heard the door unlock with both latches, if he [appellant] would have closed the door, if he would have came back in, you're going to hear it. . . ." Wolak testified appellant drove a white Cadillac. After this offense occurred, Wolak did not see any scratches on the Cadillac's front bumper.

4

Appellant did not testify during the guilt-innocence phase of his trial.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant challenges the legal sufficiency of the evidence to support his conviction.

#### 1. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Consequently, we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said, quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *See id.* "It is the

obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "Furthermore, '[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.* (quoting *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992)), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002).

Section 30.02 of the penal code provides, in relevant part, that "(a) A person commits an offense [of burglary of a habitation] if, without the effective consent of the owner, the person:   (1) enters a habitation, . . . with intent to commit a felony, theft, or an assault[.]"   TEX. PENAL CODE ANN. § 30.02(a)(1).   "A person commits an offense of [criminal attempt] if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."   *Id.* § 15.01(a).

### 2. Analysis

The evidence showed that Gray did not consent to an entry or attempted entry by appellant into his home.   Kirk identified appellant as the man whom she saw repeatedly driving the Cadillac into the garage door to Gray's house.   Appellant's attempted entry into Gray's habitation at night is a circumstance indicating guilt, from which the jury may infer an intent to commit theft.   *See Browning v. State*, 720 S.W.2d 504, 506 (Tex. Crim. App. 1986); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985).   The evidence showing appellant attempted to enter Gray's house is as follows:   Kirk saw appellant

6

driving a Cadillac, which was in Gray's driveway. Appellant backed up the Cadillac and then accelerated forward, hitting Gray's garage door. After doing this four times, appellant got out of the Cadillac and went to an opening, which was at the right side of the garage door. He tried to "squeeze" into the garage, but the opening was too small. Gray testified that the damage caused to his garage door created a six to twelve inch opening, which was enough room for a person to reach into the garage. Detective Saiz testified appellant's car had a damaged bumper. Appellant drove a white Cadillac.

The contrary evidence showed that: (1) the Cadillac that appellant owned had no scratches on the front end the morning after the incident; (2) appellant's Cadillac did not have any damage to its front bumper; (3) no physical evidence connected appellant to the offense: and (4) Wolak testified that he would have heard appellant leave the apartment and that appellant did not leave the apartment until well after the offense occurred. The court of criminal appeals has stated that "a jury is permitted to believe or disbelieve any part of a witness' testimony, including a defendant." *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). Thus, the jury could have decided to disbelieve Wolak's testimony and to believe Kirk's testimony that she saw appellant driving the Cadillac into Gray's garage door.

After viewing all of the evidence in the light most favorable to the verdict, we hold a rational trier of fact could have found beyond a reasonable doubt that appellant committed the offense of attempted burglary of a habitation with intent to commit theft. Issue one is overruled.

## B. Reasonable-Doubt Instruction

In issue four, appellant argues he suffered egregious harm because during sentencing, the trial court failed to give the jury a reasonable-doubt instruction in the punishment charge regarding the Mayfield burglary.

### 1. Standard of Review for Charge Error

"[A]n appellate court's first duty in evaluating a jury charge issue is to determine whether error exists. Then, if error is found, the appellate court should analyze that error for harm." *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If, as in the case before us, "no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

### 2. Extraneous Offense Burden of Proof Charge is Required

The code of criminal procedure provides that:

> Evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing, including . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2010). Whether or not the defendant requests the instruction, the trial court must instruct the jury in the punishment phase that extraneous offenses must be proven beyond a reasonable doubt. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). The trial court is required to give the instruction to the jury as the law of the case. *Id.* Therefore, defense counsel's failure to

object to the jury charge at the punishment phase does not waive error; rather, the trial court's failure to give the instruction is subject to the egregious-harm analysis. *Id.*; *Graves v. State*, 176 S.W.3d 422, 435 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd).

### 3. Error Analysis

During the punishment phase, the State introduced evidence regarding appellant's prior convictions, as well as testimony about an unadjudicated extraneous offense. With regard to the unadjudicated extraneous offense, Charles Mayfield testified that in the early morning of December 15, 2009, he saw a man get out of a car "and walk toward my neighbor's vehicles." When Mayfield got into his own car, he saw that his car's "back window had been broken out. . . ." Mayfield drove behind the man's car and wrote down the license number. He described the car as a pale yellow or light-colored, four-door Cadillac. Mayfield chased the Cadillac for some distance but eventually gave up the chase. Thereafter, the police recovered a briefcase from appellant's apartment. Mayfield identified the briefcase as the one stolen from him in an auto burglary that occurred at least six months prior to the incident of December 15, 2009. When the police showed Mayfield a photo lineup, he was seventy percent sure that one of the photos depicted the man he saw on the night of December 15, 2009.

Sergeant Steven Markgraf testified that the Cadillac's license number belonged to appellant and that appellant drove a white, older model, four-door Cadillac. He stated that in March 2010, the police searched appellant's apartment and recovered "a laptop briefcase with a luggage tag with the complainant's name on it." Mayfield identified the briefcase as his.

9

Appellant testified he did not commit the Mayfield burglary. He stated his car had a missing license plate and that "[j]ust because someone saw my plate, doesn't make it my car." He denied having Mayfield's briefcase.

The trial court erred in failing to include a burden-of-proof instruction concerning the unadjudicated offense, i.e., the Mayfield burglary. Appellant was entitled to an instruction that the unadjudicated extraneous offense must be proven beyond a reasonable doubt before the jury can consider it. *Huizar*, 12 S.W.3d at 484. Therefore, we hold the punishment charge was erroneous by failing to include the burden-of-proof instructions for an unadjudicated extraneous offense admitted in the punishment phase. *Id.*

### 4. Harm Analysis

Having determined the trial court erred by failing to charge the jury as required, we examine the record to determine whether appellant was egregiously harmed. *Almanza*, 686 S.W.2d at 171. Any harm that is inflicted by the erroneous charge must be "assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see Ngo v. State*, 175 S.W.3d 738, 750 n.48 (Tex. Crim. App. 2005). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). We engage in this assessment to illuminate the actual, not just theoretical, harm to the accused.

10

*Almanza*, 686 S.W.2d at 174. In addition, egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *See Hutch*, 922 S.W.2d at 171.

### a. The Entirety of the Charge

In its punishment charge, the trial court failed to instruct the jury to not consider extraneous unadjudicated offenses unless they were proven beyond a reasonable doubt. However, the guilt-innocence charge also told the jury that the "burden of proof in all criminal cases rests upon the State throughout the trial, and never shifts to the defendant" and that "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." We conclude that the guilt-innocence charge instructing the jury that the State has the burden of proof throughout the trial is a circumstance that weighs neither for nor against a finding of egregious harm. *See Martinez v. State*, 313 S.W.3d 358, 367 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).[2]

### b. The Evidence

"In examining whether egregious harm occurred from the failure to include the burden-of-proof instruction for unadjudicated extraneous offenses admitted in the punishment phase of trial," we may "compare the evidence related to the unadjudicated extraneous offenses with the other guilt and punishment evidence in the case." *Id.* at 368; *see Escovedo v. State*, 902 S.W.2d 109, 115 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (finding no indication that jury would have "disregarded or discounted the extraneous offense[s] and assessed a lighter sentence with a burden of proof

---

[2] In *Martinez*, the trial court failed to instruct the jury to not consider the extraneous evidence unless it was proven beyond a reasonable doubt. *Martinez v. State*, 313 S.W.3d 358, 367 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). However, the trial court's charge to the jury stated, "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." *Id.* The court concluded "that the general charge instructing the jury that the State has the burden of proof throughout the trial is a circumstance that weighs neither for or against a finding of egregious harm." *Id.*

11

instruction").

The State's evidence at guilt-innocence was strong. Kirk identified appellant as the person whom she saw driving the Cadillac into Gray's garage door. However, appellant did not leave the State's evidence uncontested. His roommate, Matthew Wolak, testified that even though he was asleep at the time the offense allegedly occurred, he would have woke up if appellant had tried to leave the apartment. Nevertheless, during the punishment phase, the State introduced into evidence: (1) State's exhibit 8, appellant's conviction for aggravated assault with a deadly weapon; (2) State's exhibit 9, appellant's conviction for unauthorized use of a motor vehicle; (3) State's exhibit 10, appellant's conviction for misdemeanor possession of marihuana; (4) State's exhibit 11, appellant's conviction for unlawful carrying of a weapon; (5) State's exhibit 12, appellant's conviction for burglary of a vehicle; (6) State's exhibit 13, appellant's conviction for burglary of a vehicle; and (7) State's exhibit 14, appellant's conviction for evading arrest.

In light of the evidence of appellant's guilt for the offense of attempted burglary of a habitation along with his criminal history, there is no indication that the jury would have disregarded or discounted the Mayfield burglary and assessed a lighter sentence had the trial court included a burden-of-proof instruction in the jury charge. We conclude the evidence presented by the State regarding the Mayfield burglary, in light of appellant's entire criminal history and the jury's acceptance of the State's version of events in its finding appellant guilty of attempted burglary of a habitation, weighs against a finding of egregious harm.

12

### c. Arguments of Counsel

During the punishment-phase closing argument, defense counsel reminded the jury that Mayfield was only seventy percent sure that a person depicted in the photo lineup was the person Mayfield saw on December 15, 2009. Defense counsel also reminded the jury that during the punishment phase, Mayfield could not identify appellant in the courtroom. With respect to the Mayfield burglary, the prosecutor argued: "In 2008, he's [appellant] released [from prison] . . . . And then we learn that by December 15th of 2009, he commits the burglary of a vehicle . . . on Mr. Mayfield's car." Later, the prosecutor argued:

> [A]s Mr. Mayfield pointed out his car was broken into several times. The . . . time that he was able to testify to, December '09 case was the time that he was actually able to get a look at the defendant and specifically get his license plate number. . . . [A]nd you heard from Sergeant Markgraf, that one of the items that was stolen in the previous burglaries of Mr. Mayfield's vehicle was found in the defendant's apartment. . . .

Even though the prosecutor made references to the Mayfield burglary, the offense was included as part of a general theme of appellant's character in the State's argument that appellant had a lengthy criminal history, which preceded the attempted burglary of Gray's house. The State did not rely solely on the Mayfield burglary in its request for a sentence of between fifteen to twenty years. We conclude that the arguments of counsel, in light of appellant's entire criminal history, and the jury's acceptance of the State's version of events in its finding appellant guilty of attempted burglary of a habitation, weighs against a finding of egregious harm.

13

### d. Other Relevant Information

"In addressing other relevant information, we may consider the severity of the punishment assessed, which may indicate egregious harm in some situations." *Martinez*, 313 S.W.3d at 369; *see Bolden v. State*, 73 S.W.3d 428, 432 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Here, appellant was found guilty of attempted burglary of a habitation, a third-degree felony. *See* TEX. PENAL CODE ANN. § 30.02(c)(2) (stating that "an offense under this section ["Burglary"] is a: felony of the second degree if committed in a habitation."); § 15.01(d) (stating that "[a]n offense under this section ["Criminal Attempt'] is one category lower than the offense attempted, . . . ."). During the punishment phase, appellant pleaded true to the indictment's enhancement paragraph, which alleged a prior conviction for aggravated assault with a deadly weapon. This elevated his punishment range to that of a second-degree felony. *See id.* §§ 12.42(a)(3) (West Supp. 2011) (enhancing third-degree felony, with one prior enhancement offense, to a second-degree felony punishment range), 12.33(a) (incarceration range for second-degree felony, two years to twenty years). Appellant received a ten-year sentence, which is in the middle of the punishment range for a second-degree felony. However, even if appellant received the maximum sentence, that alone does not indicate egregious harm. *Martinez*, 313 S.W.3d at 369; *see Huizar*, 12 S.W.3d at 484. Egregious harm does not exist if the jury would still have assessed a mid-range sentence, even if properly instructed to consider only extraneous offenses if they first found that appellant had committed the extraneous offense beyond a reasonable doubt. *See Martinez*, 313 S.W.3d at 369 (stating that "[t]here is no egregious

14

harm if the jury would still have assessed a life sentence, even if properly instructed to consider only extraneous offenses if they first found that appellant had committed those offenses beyond a reasonable doubt.").

The record, exclusive of the Mayfield burglary, presented at the punishment phase suggests the jury would have assessed the same sentence, especially in light of his prior criminal history. Thus, even if the jury had been properly instructed, it would likely have reached the same result. We conclude that the ten-year sentence given by the jury, in light of appellant's prior criminal record and the facts surrounding the offense of attempted burglary of a habitation, weighs against a finding of egregious harm.

### 5. No Finding of Egregious Harm

In determining whether appellant was egregiously harmed, the harm we consider is the impact of the omission of a reasonable-doubt instruction concerning the unadjudicated offense, i.e., the Mayfield burglary. *See Martinez*, 313 S.W.3d at 369–70; *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Based on our review of the record and the *Almanza* factors, we cannot conclude appellant was denied a fair and impartial trial in the jury's determination assessing a ten-year sentence because the State presented uncontested evidence of appellant's prior convictions, spanning several years of appellant's life. We hold that the omission of the required jury instruction did not egregiously harm appellant. Issue four is overruled.

15

## C. Ineffective Assistance of Counsel

In issue two, appellant complains he received ineffective assistance of counsel.

### 1. Standard of Review

The Sixth Amendment to the United States Constitution and section ten of article 1 of the Texas Constitution guarantee people the right to assistance of counsel in a criminal prosecution. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10). The right to counsel requires more than a lawyer's presence; it necessarily requires the right to effective assistance. *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). However, the right does not provide a right to error-free counsel,[3] but rather to objectively reasonable representation. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

"To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the U.S. Supreme Court in *Strickland.*"[4] *Id.* (citing *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986)). "Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 689). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Id.* (citing *Strickland*, 466 U.S. at 687). "In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under

---

[3] *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

[4] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

the prevailing professional norms." *Id.* "To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687).

"An appellate court must make a 'strong presumption that counsel's performance fell within the wide range of reasonably professional assistance '" *Id.* (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689). "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Id.* (citing *Robertson*, 187 S.W.3d at 483). "While a single error will not typically result in a finding of ineffective assistance of counsel, an egregious error may satisfy the *Strickland* prongs on its own." *Id.* (citing *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (stating counsel's failure to request jury instruction on issue of necessity when

17

appropriate was both deficient and prejudicial)); *see Thompson*, 9 S.W.3d at 813 (stating that "while this Court has been hesitant to 'designate any error as per se ineffective assistance of counsel as a matter of law,' it is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance.").

"In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal."  *Id.* (citing *Massaro v. United States*, 538 U.S. 500, 508 (2003); *Robinson v. State*, 16 S.W.3d 808, 813 (Tex. Crim. App. 2000)).  "However, this is a difficult hurdle to overcome; the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning."  *Id.* (citing *Strickland*, 466 U.S. at 690; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005)).

The Court of Criminal Appeals "has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus."  *Id.* (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)); *see Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004).  "On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'"  *Id.* (quoting *Bone*, 77 S.W.3d at 833).  "Unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel

18

rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus."  *Id.*

### 2. Analysis

First, appellant argues defense counsel was ineffective because he did not challenge the pretrial photo lineup[5] presented to Barbara Kirk.   In considering the scope of due-process rights afforded an accused with regard to the admission of identification evidence, the United States Supreme Court "has held that a pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law." *Conner v. State*, 67 S.W.3d 192, 200 (Tex. Crim. App. 2001) (citing *Stovall v. Denno*, 388 U.S. 293 (1967); *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995)).   When reviewing an accused's challenge to the admissibility of a pretrial identification procedure, we employ a two-step analysis:   (1) whether the pretrial identification procedure was impermissibly suggestive; and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification.   *Barley,* 906 S.W.2d at 33 (citing *Simmons v. United States*, 390 U.S. 377 (1968)).   "An analysis under these steps requires an examination of the 'totality of the circumstances' surrounding the particular case and a determination of the reliability of the identification."   *Id.*

"Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array."   *Id.* (citing *Herrera v. State*, 682 S.W.2d 313 (Tex. Crim. App. 1984)).   Or suggestiveness "may also be created by the

---

[5] The trial court admitted the photo lineup into evidence as State's exhibit 2.

19

content of the line-up or photo array itself if the suspect is the only individual closely resembling the pre-procedure description." *Id.*; *see Williams v. State*, 675 S.W.2d 754 (Tex. Crim. App. 1984). "Furthermore, an individual procedure may be suggestive or the cumulative effect of the procedure may be suggestive." *Barley*, 906 S.W.2d at 33.

If it is determined that the pretrial identification procedure was impermissibly suggestive, we then determine whether the procedure created a substantial likelihood of irreparable misidentification. *Id.* at 34. "The test is whether, considering the totality of the circumstances, 'the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1997) (quoting *Simmons*, 390 U.S. at 384). However, "if the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed 'reliable.'" *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988). "Reliability is the linchpin in determining the admissibility of identification testimony." *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). "[A] finding that a challenged pretrial identification procedure was not in fact impermissibly suggestive will obviate the need to assay whether under the circumstances it created a substantial likelihood of misidentification." *Webb*, 760 S.W.2d at 269.

In this case, even though the offense in question occurred at 3:38 a.m., Kirk testified that "[w]e actually have really good lighting because of the streetlighting on the corner." She stated that when appellant "got out of the car . . . I was able to get a good look at his face, as well as when he backed [the car] up." After the incident, she gave

appellant's description to the police. She described appellant as about six feet tall and "fair skinned with kind of a darker hair." She said that when Detective Saiz showed her the photo lineup, "he handed me that [photo lineup] and a pen, and he said look at this and circle the one that you believe to be him." When the prosecutor asked her, "[D]id he do anything to indicate who you should pick?", she said, "Absolutely not." She picked photo number two, which is appellant's photo.

On cross-examination, Kirk testified that when Detective Saiz showed her the photo lineup, he told her, "[H]ere are some photographs of several--can you identify." When defense counsel asked her, "And he said it was one of these individuals; is that correct?", she said, "No." She explained that Detective Saiz, "just handed . . . it [the photo lineup] to me and . . . he said, 'Can you pick out from this lineup?' And that's what I did."

Detective Saiz testified that when preparing a photo lineup, "we put together a lineup of six individual photographs. We try to use similar characteristics or features . . . for all the individuals." In this particular photo lineup, he used "all Anglo males" of "similar size" and "[b]uild" with "similar hair color." He stated that when he presented the photo lineup to Kirk, he told her that she is "going to be looking at this photo lineup. It contains six photographs and that the suspect may or may not be included." He stated Kirk selected appellant's photo from the photo lineup. Detective Saiz showed Kirk the photo lineup on March 23, 2010, which was a little more than two weeks after the offense.

21

Thus, there was no suggestiveness created by the manner in which Detective Saiz conducted the pretrial identification procedure. In preparing the photo-lineup, he exercised care to prevent any hint or suggestion regarding which photo might be selected. Furthermore, the six photos that he used for the lineup consisted of Anglo males of similar size and build with similar hair color. When he showed the photo lineup to Kirk, he did not point out appellant or suggest that appellant's photo was included in the lineup. The appellate record includes a copy of the lineup, and we note that appellant's photo is similar to the men shown in the other five photos in that they all have similar-looking noses, full eyebrows, and big foreheads.

Appellant points out that according to Detective Saiz's testimony, Kirk told Detective Saiz the suspect had "spiky" or "spiked" hair. He argues the photo lineup is impermissibly suggestive because his lineup photo is the only one that shows a person: (1) who has spiked hair; (2) who has a square jaw and a long neck; (3) who is not wearing a solid-colored shirt; and (4) who is wearing a necklace. However, the court of criminal appeals has stated that "lineup participants need not be identical to satisfy due process requirements." *Luna*, 268 S.W.3d at 607–08.

Appellant's photo was selected from the lineup by Kirk, who witnessed the crime at close hand under satisfactory viewing conditions. Our review of the facts of this case and the totality of surrounding circumstances demonstrates the photo-lineup procedure was not impermissibly suggestive and did not give rise to a very substantial likelihood of irreparable misidentification. Consequently, any objection to the introduction of the photo lineup into evidence would have lacked merit. We conclude appellant has failed to

meet the first prong of the *Strickland* test because he has not shown defense counsel's failure to object to the introduction of the photo lineup amounted to representation that fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689.

Second, appellant argues defense counsel was ineffective by failing to object to Kirk's in-court identification of him, which appellant claims was tainted by the impermissibly suggestive photo lineup. "An in-court identification is inadmissible when it has been tainted by an impermissibly-suggestive pretrial photographic identification." *Ibarra*, 11 S.W.3d at 195. "The test is whether, considering the totality of the circumstances, 'the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Simmons*, 390 U.S. at 384). "Reliability is the critical question:

> [I]f the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed "reliable," "reliability [being] the linchpin in determining the admissibility of identification testimony."

*Id.* (quoting *Webb*, 760 S.W.2d at 269) (quoting *Manson v. Brathwaite*, 432 U.S. 98 (1977)).

Here, because the pretrial photo lineup was not impermissibly suggestive, appellant has failed to meet the first prong of the *Strickland* test. Appellant has not shown defense counsel's failure to object to Kirk's in-court identification amounted to representation that fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689.

23

Third, appellant argues defense counsel rendered ineffective assistance by failing to object during the punishment phase to the omission of a reasonable-doubt instruction concerning an extraneous offense, i.e., the Mayfield burglary. At punishment, a defendant is entitled, without request, to have the jury receive a reasonable-doubt instruction regarding extraneous offenses. *Huizar*, 12 S.W.3d at 484. Therefore, the trial court errs by failing to instruct the jury sua sponte. *Id.*

The record contains no evidence regarding the reasons defense counsel chose not to request a reasonable-doubt instruction in the punishment charge. Normally, a silent record cannot defeat the strong presumption of effective assistance of counsel. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). Even if counsel's performance was deficient under the first prong of *Strickland*, appellant has failed to show there was a reasonable probability the result of the proceeding would have been different if the jury had received a reasonable-doubt instruction. There is no evidence in the record that the jury reached its sentencing decision by relying on evidence of an extraneous offense. The jury could have reached the same result by relying solely on the evidence presented during the guilt-innocence phase as well as appellant's criminal history. Based on the totality of the evidence, the jury could have appropriately decided appellant's offense justified the sentence. On the record before us, we hold appellant has failed to establish defense counsel rendered ineffective assistance of counsel. Issue two is overruled.

24

**D. Jury Argument**

In issue three, appellant argues the trial court abused its discretion by overruling defense counsel's objection to the prosecutor's closing argument regarding appellant's "failure to call Nicole Garibay as a witness . . . since there was no evidence that she was available to testify." During the State's closing argument at the guilt-innocence phase, the prosecutor stated:

> And so, let's think about the more important question: How many people, if we are assuming that he's [Mr. Wolak] are telling the truth, how many people were in that apartment that night? Him [Mr. Wolak], the defendant and Nicole Garibay, right?

> And she is the one, through his [Mr. Wolak's] testimony, that was in the bedroom with Bennie Lee Walker. But where is she today? They have the ability to call witnesses. They can subpoena witnesses. They can bring them in here. If she's going to come in and testify that he [appellant] was with her all night, I think she would have been here but she wasn't. Think about that.

At that point, defense counsel objected, "Your Honor, I am going to object that the State is trying to shift the burden of proof to the defense." The trial court overruled the objection, and the prosecutor remarked, "It goes to the credibility of Mr. Wolak. . . ."

Rule 33.1 of the Texas Rules of Appellate Procedure governs preservation of error, and states, in part:

> (a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:

> > (1) the complaint was made to the trial court by a timely request, objection, or motion that:

> > (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context;

25

TEX. R. APP. P. 33.1.

This rule encompasses the concept of "party responsibility." *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005). In other words, "[t]he complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Id.* at 177. "To avoid forfeiting a complaint on appeal, the party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Pena v State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). This method gives the trial court and the opposing party a chance to correct the error. *Id.* "Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial. In making this determination, we consider the context in which the complaint was made and the parties' shared understanding at that time." *Id.* (footnote omitted).

In this case, the objection was that "the State is trying to shift the burden of proof to the defense." However, the complaint on appeal is that the prosecutor's "comment on the defense's failure to call Garibay as a witness was improper, since there was no evidence that she was available to testify." In considering the context in which the complaint was made and the parties' shared understanding at that time, there is nothing to indicate there was no evidence that Garibay was available to testify. We hold that because the objection at trial does not comport with the complaint on appeal, appellant

26

has failed to preserve this issue for appellate review.  *See id.*  Issue three is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of December, 2011.